**ELEKTA INSTRUMENT S.A., Plaintiff,**

v.

**O.U.R. SCIENTIFIC INTERNATIONAL, INC., Defendant.**

**No. 97 Civ. 6801 LMM.**

United States District Court, S.D. New York.

June 15, 1999.

Theresa M. Gillis, Alan H. Pollack, Jones, Day, Reavis & Pogue, New York City, for plaintiff.

Frankie Chu, Law Offices of Frankie Chu, P.C., New York City, of counsel, C. Allen Foster, Garret Rasmussen, Stephen J. Kott, Patton Boggs, L.L.P., Washington, DC, Robert A. Matthews, Jr., Reed Smith Shaw & McClay, LLP, Pittsburgh, PA, for defendant.

### MEMORANDUM AND ORDER

McKENNA, District Judge.

In this patent infringement action, defendant O.U.R. Scientific International, Inc. ("OSI") moves for summary judgment of noninfringement of U.S.Patent 4,780,898 ("the '898 Patent"), and plaintiff Elekta Instrument S.A. ("Elekta") cross-moves for summary judgment of infringement.

For the reasons set forth below, defendant's motion for summary judgment is denied and plaintiff's cross-motion for summary judgment is granted.

### I. FACTS

The parties to this action market and/or sell medical devices known as gamma units. Gamma units are used to treat brain tumors and other brain abnormalities through focused radiation therapy, as an alternative to open skull surgery. A gamma unit focuses multiple beams of radiation onto a common focal point within the brain. While each individual beam is harmless to the brain tissue, when multiple beams intersect, the combined energy at the focal point works to destroy the abnormal tissue. Gamma units generally have several basic components: cobalt radiation

sources located in a large hemispherical shaped radiation shield; circular holes, called beam channels, contained within such shield and directed inward and radially; an inner collimator containing holes that are aligned with the beam channels, which is used to control dosage and distribution of the radiation; and a treatment table for moving the patient into and out of the treatment chamber. (*See* OSI Mem. at 2–3).

Plaintiff Elekta, a Swiss corporation, is the owner of the '898 Patent, which issued on October 25, 1988. Entitled "Arrangement in a Gamma Unit," it claims a specific arrangement of radiation sources and beam channels in a gamma unit such that there is minimal risk of radiation scatter outside the unit. (*See* Pollack Decl.Ex. B).

## A. The Prior Art

In the prior art gamma units, the radiation sources were positioned over the crown of the patient's head.[1] This required the patient's head to be secured in the inner collimator helmet at a 55° angle relative to the horizontal plane of the treatment table in order to prevent radiation from passing through the longitudinal axis of the patient and escaping outside the helmet. (*See* Pl.'s 56.1 St. ¶¶ 7–8). Tipping the patient's head at such an angle reduced, but did not eliminate, the potential for radiation scatter. (*Id.* ¶ 8; *see* '898 Patent col. 1, lines 30–35).

## B. The '898 Patent

In 1986, Hans Sundqvist filed the Swedish patent application that ultimately matured into the '898 Patent. (Pl.'s 56.1 St. ¶ 9). The '898 Patent explains the deficiencies in prior art gamma units as follows:

In these prior art arrangements, some beams will approach the longitudinal axis of the patient so that there is a certain risk that scattered radiation and an occasional primary beam will reach

the surroundings when the door toward the central member is opened.

('898 Patent, col. 1, lines 30–35). According to Sundqvist, the novel matter in his invention consisted of eliminating the radiation sources near the longitudinal axis of the patient (*i.e.*, near 90°). The specification of the '898 Patent thus states:

The novel matter of the arrangement according to the invention resides in that the radiation sources and the beam channels directed radially therefrom toward the focal point are located, in relation to the diametrical plane across the opening to said space, **within a zone extending to latitudes 30°–45°, from said diametrical plane.**

('898 Patent, col. 1, lines 44–50) (emphasis added). According to Sundqvist, this arrangement—by allowing the patient to lie flat rather than with his head tipped at a 55° angle—would provide a gamma unit adapted to the mode of operation of CT (computer tomography) and NMR (nuclear magnetic resonance) machines, while minimizing the risk of scattered radiation. (*See* '898 Patent, col. 1, lines 38–43; *see also* col. 3, lines 3–7).

The '898 Patent contains six claims. Claim 1 is the only independent claim and is the sole claim at issue here. As originally drafted, Claim 1 provided:

1. An arrangement in a gamma unit, comprising a large number of radiation sources (9) mounted within a radiation shield (2) and having beam channels (6, 19) directed radially from said radiation sources toward a common focal point (F), ... characterized in that the radiation sources (9) and the beam channels (6, 19) directed radially therefrom toward the focal point are located, in relation to the diametrical plane through the opening to said space, **within a zone extending to latitudes 30°–45°, as seen from said diametrical plane.**

---

1. According to OSI, the prior art units had sources and beam channels ranging from approximately 10° to 90° latitude. (Def.'s Response to Pl.'s 56.1 St. ¶ 8).

(OSI Ex. F at 00127) (emphasis added). This claim was rejected by the Patent Examiner for various reasons, including obviousness in view of the prior art. (*See* OSI Ex. G at 00148).

In the first Office Action, mailed on December 29, 1987, the Patent Examiner stated:

> Claims 1–6 are rejected under 35 U.S.C. 103 as being unpatentable over applicants [sic] disclosure.

> From what the examiner can tell from applicants [sic] statements on page 1 of his disclosure concerning the background of the art, everything as claimed is already known. Applicants [sic] stated point of novelty is only the elimination of the radiation sources which are located within a zone that is near or on the longitudinal plane of the patient. Applicant claims his sources within a zone of latitudes from 30°–45°. But the prior art gamma units have sources which are located within a zone which includes 30°–45°. **Applicant does not claim the zone which is exclusively 30°–45° or that his sources specifically are not at latitudes near the longitudinal plane of the patient.**

(*Id.*) (emphasis added). Shortly thereafter, the Examiner met with Sundqvist's attorney, who provided an "explanation of the relation of the beam channels to the diametrical plane." (Pollack Decl.Ex. F at PH–42). An amended drawing was also submitted to the Examiner. The new drawing, which depicted beam channels located at approximately 10° to 35° latitude (*see id.* At PH–44; Pl.'s 56.1 St. ¶ 21), was approved by the Examiner before he allowed the claims which issued in the '898 Patent. (Pl.'s 56.1 St. ¶ 21; Pollack Decl. Ex. F at PH–53).

On April 28, 1988, Sundqvist submitted an amended application to the PTO. Of significance here, Claim 1 was amended to provide:

> 1. An arrangement in a gamma unit, comprising a plurality of radiation sources mounted within a radiation shield and having beam channels directed radially from said radiation sources toward a common focal point, said radiation shield comprising a space for accommodating the head of a patient lying on a support, and having an opening, the radiation sources and the beam channels directed radially from said space toward the focal point being located, in relation to the diametrical plane extending across the opening to said space, **only within a zone extending between latitudes 30°–45°, as seen from said diametrical plane.**

('898 Patent, col. 3, lines 16–27) (emphasis added).[2] The claims as amended were allowed by the Examiner.

## C. OSI's Rotating Gamma System

OSI offers for sale in the U.S. the O.U.R. Rotating Gamma System ("RGS") designed by O.U.R. New Medical Technology Development Co., Ltd., Shenzen China. (Def.'s 56.1 St. ¶ 13). The RGS is a gamma unit which uses only 30 radiation sources, as opposed to the "plurality" of radiation sources described in the '898 Patent, and the 201 sources used in Elekta's device, the "Gamma Knife." (*Id.* ¶ 14). It is undisputed that the radiation sources and beam channels in the RGS are positioned at latitudes ranging from 14° to 43° in relation to the diametrical plane. (Pl.'s 56.1 St. ¶ 32; Def.'s 56.1 St. ¶ 16).

The RGS differs from Elekta's Gamma Knife in that its 30 radiation sources and the collimator containing the beam channels rotate about a central mandrel to provide for application of the radiation treatment. (*See* Def.'s 56.1 St. ¶ 20). In

---

**2.** Dependent Claim 2 was also amended. Whereas the original claim read "said zones extending to maximally latitudes 30°–45°" (OSI Ex. F at 00127), it was amended to read "said zones extending only between latitudes 30°–45°, as seen from the essentially vertical diametrical plane...." ('898 Patent, col. 3, line 42 to col. 4, line 1).

Elekta's Gamma Knife, on the other hand, the radiation sources are stationary.[3] (*Id.*)

On June 18, 1986, the inventors of the RGS were issued U.S.Patent 5,528,653 ("the '653 Patent") entitled "Rotational Co-niformly–Focused Gamma Radiating Unit." (*See* OSI Ex. K). The '653 Patent was granted in view of and over Elekta's '898 Patent. (Def.'s 56.1 St. ¶ 21; '653 Patent, OSI Ex. K at 00001).

## II. DISCUSSION

### A. Legal Standard

Summary judgment shall be granted when the court determines that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is improper 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed.Cir.1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When determining such a motion, all facts are to be viewed, and all reasonable inferences drawn, in favor of the nonmoving party. *Id.*

The determination of whether a patent claim has been infringed requires a two-step analysis. "'First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.'" *Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1353 (Fed.Cir.1998) (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1576 (Fed.Cir.1993)). The first step, claim construction, is a question of law for the court. *Id.; see also Markman v. Westview Instrs., Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The second step, determination of infringe-ment, is a question of fact. *Bai,* 160 F.3d at 1353; *Johns Hopkins,* 152 F.3d at 1354.

Plaintiff, as patent holder, bears the burden of proving infringement by a preponderance of the evidence. *Kegel Co. v. AMF Bowling, Inc.,* 127 F.3d 1420, 1425 (Fed.Cir.1997); *CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1161 (Fed.Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed.Cir.), *cert. denied,* 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). A literal infringement claim is therefore properly decided upon summary judgment "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai,* 160 F.3d at 1353.

### B. Interpretation of Claim 1 of the '898 Patent

OSI argues that Claim 1, when properly interpreted, requires that all of the radiation sources and beam channels must lie *exclusively* within the latitudes of 30° to 45°. Elekta argues that Claim 1, when properly interpreted, covers units with radiation sources and beam channels located in the zone extending from the edge of the helmet (0°) *up to* a point between 30°–45°.

In interpreting a patent claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification, and the prosecution history. *Kegel,* 127 F.3d at 1426; *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996); *Markman,* 52 F.3d at 979. The words of the claims themselves should be considered first in defining the scope of the patented invention. *Digital Biometrics,*

---

3. OSI contends that the radiation sources are also stationary in the unit described in the '898 Patent (*Id.*); Elekta, however, claims that the unit described in the '898 Patent is not limited to stationary sources and collimators. (Pl.'s Response to Def.'s 56.1 St. ¶ 20).

*Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed.Cir.1998); *Vitronics*, 90 F.3d at 1582. Words in a claim are generally given their ordinary meaning, unless the patentee has manifested an express intent to ascribe a novel or different meaning to a claim term. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed.Cir. 1998); *Vitronics*, 90 F.3d at 1582; *Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed.Cir.1995).

■ As noted above, Claim 1 provides that the radiation sources and beam channels be located "only within a zone extending between latitudes 30°–45°, as seen from said diametrical plane." ('898 Patent, col. 3, lines 26–27). OSI argues that the terms "only" and "extending between," when given their ordinary and common meaning, expressly limit Claim 1 to devices with beam channels and radiation sources located exclusively within a latitude range beginning at 30° and ending at 45°. Although OSI's interpretation has superficial appeal when the quoted claim language is considered in isolation, when the claim is read in its entirety, it is evident that its terms are imprecise. Because "extending" is synonymous with "reaching," and because the claimed zone is described in reference to the diametrical plane (0°), Claim 1 can also be read to cover sources and beams located within a zone that starts at 0° and reaches a point between 30°–45°.

■ When terms in a claim require clarification, the court should look to the specification for guidance. *See Renishaw*, 158 F.3d at 1248–50; *Vitronics*, 90 F.3d at 1582–83. Although the court may not read a limitation into a claim from the specification, *see McClain v. Ortmayer*, 141 U.S. 419, 423–24, 12 S.Ct. 76, 35 L.Ed. 800 (1891); *Renishaw*, 158 F.3d at 1248, it should look to the specification to define or clarify a term appearing in a claim limitation, "for a claim must be read in view of the specification of which it is a part." *Renishaw*, 158 F.3d at 1248; *see also Young Dental Mfg. Co. v. Q3 Special*

*Prods., Inc.*, 112 F.3d 1137, 1143 (Fed.Cir. 1997); *Vitronics*, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis."); *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 750 (Fed.Cir.1987) (noting that it was error for district court not to consider specification in interpreting claim terms), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988).

Here, the specification repeatedly describes a gamma unit with sources and channels located within a zone beginning at the edge of the helmet (0°) and extending to a maximum latitude of 30°–45°:

> The beam channels are located **within an annular portion adjacent the free edge** of the central member **and have an inward extent amounting to 30°–45°**, as is shown in FIG. 4. In other words, the beam channels are located within an annular curved zone **extending maximally up to latitudes 30°–45°**, as seen from the diametrical plane.

('1898 Patent, col. 2, lines 16–22) (emphasis added).

> As has been mentioned above, the beam channels ... are arranged in an annular portion of the semispherical central member **adjacent the edge thereof ... and lie within a portion extending up to 30°–45° from the vertical plane.**

(*Id.*, col. 2, line 64 – col. 3, line 3 (emphasis added); *see also* col. 1, lines 44–50). OSI does not deny that the specification supports this interpretation; rather, it argues that, as a matter of law, the specification may not be used to expand the scope of the claim's coverage or to alter the otherwise clear meaning of claim terms.

By referring to the specification, however, the Court does not thereby incorporate limitations into Claim 1 that do not appear in the claim itself; rather, the specification aids the Court's interpretation of Claim 1 by clarifying the meaning of the terms used therein. To accept OSI's interpretation of Claim 1, on the other hand, based on the purported "plain meaning" of its

terms, would fly in the face of the specification. *See Renishaw*, 158 F.3d at 1250 ("[A] common meaning ... that flies in the face of the patent disclosure is undeserving of fealty."); *Lewmar*, 827 F.2d at 750 (district court's interpretation of claim term was contrary to specification and prosecution history and therefore wrong as a matter of law).

Elekta's interpretation of Claim 1 finds further support in the drawings submitted with the '898 Patent. Figure 4—even the "unamended" version that issued with the patent—depicts lines at approximately 5° and 45° latitude, indicating that the zone claimed includes latitudes below 30°. (*See* OSI Ex. E at 00097). Furthermore, the amended drawing shown to the Examiner clearly depicts beam channels located within these lines, at approximately 10° and 35° latitude.[4] When viewed in conjunction with the specification, the drawings thus support Elekta's interpretation of Claim 1 as covering sources and beams located within a zone which begins at 0° and has an upper limit of 30° to 45°.

 Elekta's interpretation is also consistent with the prosecution history. The prosecution history is important in claim interpretation because it "contains the complete record of all the proceedings before the [PTO], including any express representations made by the applicant regarding the scope of the claims." *Vitronics*, 90 F.3d at 1582. Claims that have been narrowed in order to obtain issuance of the patent over prior art may not later be interpreted to cover that which was disclaimed during prosecution. *See Graham v. John Deere Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Southwall*, 54 F.3d at 1576.

OSI argues that in amending Claim 1 in response to the Examiner's rejection, Elekta chose to claim "the zone which is exclusively 30°–45°'" (OSI Ex. G at 00148), and thereby surrendered claim to any arrangements that include sources or channels located outside this latitude range. OSI maintains that this is the only way to interpret Elekta's amendment, because Claim 1, as originally submitted to the Patent Office, *already* excluded sources above 45°. Thus, Elekta's use of the terms "only" and "between" in the amended claim can only be read as a further narrowing of the claim, *i.e.*, a disclaimer of sources below 30°. The Court disagrees.

First, OSI is incorrect that Claim 1 as originally drafted already excluded sources above 45°. The Examiner specifically stated in the First Office Action that Claim 1 did *not* exclude sources at latitudes near the longitudinal plane of the patient. (*See* OSI Ex. G at 00148). He rejected the claims because he believed that they were not consistent with the claimed novelty of the invention in that they did not expressly exclude sources near 90°.

Second, the Court finds that, by amending Claim 1 to include the word "only" and substituting the word "between" for the word "to," Elekta did not disclaim sources below 30°. Rather, as is evident from the drawings, these amendments were merely meant to more clearly state the point of novelty—elimination of sources near 90°. The Examiner apparently read the original Claim 1 as an open one, which could include not only sources below 45°, but also those above 45°. (*See* OSI Ex. G at 00148). By including the word "only," Elekta effectively closed the claim, making clear that the radiation sources were not near the crown, but only in the zone extending to a point between 30°–45°.

Finally, OSI's interpretation of Claim 1 should be rejected because it apparently would exclude the only embodiment specified in the patent. "Such an interpretation

4. OSI argues that the amended drawing is irrelevant because Elekta never submitted it to be included as a formal drawing with the issued patent. The Court does not find this fact to be significant. The amended drawing was submitted to the Examiner in response to the First Office Action, and was approved prior to issuance of the patent. (*See* Pollack Aff. Ex. F at PH–44, PH 50–51, 53).

is rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics,* 90 F.3d at 1583; *see Modine Mfg. Co. v. Int'l Trade Comm'n,* 75 F.3d 1545, 1550 (Fed.Cir.), *cert. denied,* 518 U.S. 1005, 116 S.Ct. 2523, 135 L.Ed.2d 1048 (1996); *Hoechst Celanese Corp. v. BP Chems., Ltd.,* 78 F.3d 1575, 1581 (Fed.Cir.) ("[I]t is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment...."), *cert. denied,* 519 U.S. 911, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996).

The Court therefore adopts, as a matter of law, Elekta's interpretation of Claim 1 as covering sources and channels beginning at the edge of the helmet (0°) and extending to a point between 30°–45°.

### C. Determination of Infringement

As noted above, in order to establish literal infringement, each and every limitation in the patent claim must be present literally in the accused device. *Southwall,* 54 F.3d at 1575; *Texas Instr., Inc. v. Int'l Trade Comm'n,* 805 F.2d 1558, 1562 (Fed. Cir.1986). Having adopted Elekta's interpretation of Claim 1 as the correct one, the Court concludes that OSI's device literally infringes Claim 1 of the '898 Patent.

■■■ OSI has admitted the facts necessary to show that the RGS meets each and every limitation of Claim 1 as properly construed, namely: that it is a gamma unit with a plurality of (30) radiation sources mounted in a radiation shield (*see* Pl.'s 56.1 St. ¶ 29; Def.'s Resp. to Pl.'s 56.1 St. ¶ 29); that it has beam channels directed radially from the sources toward a common focal point (Def.'s Response to Pl.'s 56.1 St. ¶ 30); that the shield has a hemispherical interior space into which a patient's head may be placed (*see id.* ¶ 31); that all of its radiation sources and channels fall between 14° and 43° (which is obviously within the zone of 0° to 30°–45°) (*see* Def.'s 56.1 St. ¶ 16); and that it has no radiation

sources located near the crown of the patient's head. (*See* Def.'s Response to Pl.'s 56.1 St. ¶ 28). Accordingly, OSI's device literally infringes Claim 1 of the '898 Patent.[5]

■■■ Finally, the Court rejects OSI's assertion that the so-called "reverse doctrine of equivalents" precludes a finding of infringement in this case. That doctrine provides:

> [W]here a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used [in reverse] to restrict the claim and defeat the patentee's action for infringement.

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608–09, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); *see also Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1581 (Fed.Cir.1991). The purpose of this equitable doctrine is "to prevent unwarranted extension of the claims beyond a fair scope of the patentee's invention." *Scripps,* 927 F.2d at 1581. Once the patentee has established literal infringement, the accused infringer has the burden of coming forward with evidence that the reverse doctrine should apply. *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 889 (Fed.Cir.1988); *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1124 (Fed.Cir.1985).

OSI argues that because the RGS contains substantially fewer radiation sources than the gamma unit described in the '898 Patent and employs rotational, as opposed to stationary, application of treatment, it is "so far changed in principle" and performs in a "substantially different way," such that the doctrine should apply. It further maintains that the determination of this issue requires the resolution by trial of

---

5. Because the Court has found literal infringement, it does not reach the issue of

whether there is infringement under the doctrine of equivalents.

486

material factual issues, such that summary judgment of infringement is inappropriate. The Court disagrees.

 Although the application of the reverse doctrine of equivalents is a fact issue, *see SRI,* 775 F.2d at 1124, in order to defeat a motion for summary judgment of infringement, the accused infringer must show that there are material facts in dispute relevant to the equivalence issue. *Cf. Scripps,* 927 F.2d at 1581 (where defendant raised issues of scientific and evidentiary fact material to issue of application of reverse doctrine, summary judgment was inappropriate). Here, it is undisputed that the RGS uses 30 radiation sources, while the '898 Patent discloses a gamma unit "comprising a plurality of radiation sources." ('898 Patent, col. 3, lines 16–17). Because 30 is clearly a "plurality," no reasonable juror could find that the RGS represents a substantial change from the '898 Patent based on this alleged difference. Furthermore, even assuming that the RGS's use of rotational rather than stationary application of radiation constitutes a change in principle over the '898 Patent,[6] there is no reason to believe that it is such a substantial change that the doctrine should apply and preclude a finding of infringement. It is well established that "[t]he addition of features does not avoid infringement, if all the elements of the patent claims have been adopted." *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 945 (Fed.Cir.), *cert. denied,* 498 U.S. 920, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990).

The Court therefore concludes that defendant's RGS literally infringes Claim 1 of the '898 Patent as properly construed.

## CONCLUSION

Defendant's motion for summary judgment of noninfringement is denied. Plain-

tiff's cross-motion for summary judgment of infringement is granted. Plaintiff's request for costs is denied.[7]

SO ORDERED.

---

**6.** As noted above, Elekta disputes that the '898 Patent is limited to stationary sources. (*See* Pl.'s Resp. to Def.'s 56.1 St. ¶ 20).

**7.** Because this order does not dispose of all of the claims at issue in this case, the parties are directed to inform the Court within 21 days of the date hereof as to how they propose to proceed.