**ELEKTA INSTRUMENT S.A.**
**Plaintiff–Appellee,**

v.

**O.U.R. SCIENTIFIC INTERNATIONAL, INC., Defendant–Appellant.**

**No. 99–1556.**

United States Court of Appeals,
Federal Circuit.

June 1, 2000

Rehearing and Rehearing En Banc
Denied July 10, 2000

---

Theresa M. Gillis, Jones, Day, Reavis & Pogue, of New York, New York, argued for plaintiff-appellee.

Todd E. Thompson, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, of San Francisco, California, argued for defendant-appellant. With him on the brief were Amy E. Margolin, of San Francisco, California; and Anthony De Alcuaz, of Palo Alto, California

Before LOURIE, RADER, and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

O.U.R. Scientific International, Inc. ("OSI") appeals from the decision of the United States District Court for the Southern District of New York denying its motion for summary judgment of non-infringement of U.S. Patent 4,780,898, and granting the cross-motion of Elekta Instrument S.A. ("Elekta") for summary judgment of infringement. *See Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 51 F.Supp.2d 478 (S.D.N.Y. 1999). Because the district court erred in concluding as a matter of law that OSI's Rotating Gamma System (RGS) literally infringes claim 1 of the '898 patent, we reverse.

## BACKGROUND

Elekta's '898 patent is directed to medical devices known as "gamma units." Gamma units are used for treating brain tumors through focused radiation therapy. *See Elekta*, 51 F.Supp.2d at 479. In a typical gamma unit, multiple beams of radiation are aimed at a single focal point on a patient's brain. *See id.* At the focal point, the combined energy of the multiple radiation beams destroys abnormal brain tissue. *See id.* Gamma units generally consist of several components, including: (1) "radiation sources" (*i.e.*, radioactive cobalt isotopes) located around the outer surface of a hemispherical radiation shield; (2) "beam channels," or narrow holes in the radiation shield, located beneath each radiation source; (3) a "collimator" located inside the radiation shield, with holes that are aligned with the beam channels; and (4) a treatment table for moving a patient in and out of the gamma unit. *See id.* at 479–80.

The '898 patent claims a specific arrangement of radiation sources and beam channels that reduces the risk of radiation scatter outside the gamma unit. *See* '898 patent, col. 1, ll. 38–43; col. 3, ll. 8–9. The patent contains one independent claim and five dependent claims. Independent claim 1 is the sole claim at issue. During prosecution, the examiner initially rejected claim 1 for obviousness. In response, the applicant amended claim 1 to read as follows:

1. An arrangement in a gamma unit, comprising a plurality of radiation sources mounted within a radiation shield and having beam channels directed radially from said radiation sources toward a common focal point, said radiation shield comprising a space for accommodating the head of a patient lying on a support, and having an opening, the radiation sources and the beam channels directed radially from said space toward the focal point being located, in relation to the diametrical plane extending across the opening to said space, *only within a zone extending between latitudes 30°–45°, as seen from said diametrical plane.*

*Id.* at col. 3, ll. 16–27 (emphasis added). The patent was accordingly granted. Figure 4 of the '898 patent depicts the arrangement as follows:

FIG. 4

According to the written description, the novel aspect of this arrangement is that the radiation sources **8** and the beam channels **6** and **19** are located, in relation to the diametrical plane across the opening **11** to the radiation shield **2**, "within a zone extending to latitudes 30°–45°, from said diametrical plane." *Id.* at col. 1, ll. 44–50. In other words, the radiation sources **8** and beam channels **6** and **19** are located "within an annular curved zone extending maximally *up to* latitudes 30°–45°," as seen from the diametrical or vertical plane. *See id.* at col. 2, ll. 16–22; col. 3, ll. 2–3 (emphasis added). As a result, none of the radiation sources **8** and beam channels **6** and **19** are directed out of the gamma unit, and any radiation beams that pass through

the focal point F will impinge solely upon the radiation shield **2**. *See id.* at col. 3, ll. 3–7.

OSI offers for sale in the United States its RGS gamma unit, which has radiation sources and beam channels positioned at latitudes ranging from 14° to 43° in relation to the diametrical plane. *See Elekta,* 51 F.Supp.2d at 481. Elekta sued OSI for infringement of claim 1 of the patent. *See id.* at 479. OSI moved for summary judgment of noninfringement of the patent, and Elekta cross-moved for summary judgment of infringement. *See id.* The district court denied OSI's motion and granted Elekta's cross-motion, after interpreting claim 1 as including gamma units

with radiation sources and beam channels located "beginning at the edge of the helmet (0) and extending to a point between 30°–45°," and concluding that OSI's device literally infringes claim 1 of the '898 patent. *Id.* at 485. OSI now appeals to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. Standards of Review

We review a district court's grant of summary judgment *de novo. See Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998). In reviewing a denial of a motion for summary judgment, we give considerable deference to the trial court, and "will not disturb the trial court's denial of summary judgment unless we find that the court has indeed abused its discretion." *Suntiger, Inc. v. Scientific Research Funding Group,* 189 F.3d 1327, 1333, 51 USPQ2d 1811, 1815 (Fed.Cir.1999). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.,* 145 F.3d 1303, 1307, 46 USPQ2d 1752, 1755 (Fed.Cir. 1998).

When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *See McKay v. United States,* 199 F.3d 1376, 1380 (Fed.Cir.1999). If there are no material facts in dispute precluding summary judgment, "our task is to determine whether the judgment granted is correct as a matter of law." *Marathon Oil Co. v. United States,* 177 F.3d 1331, 1337 (Fed.Cir. 1999).

A determination of infringement requires a two-step analysis. *See Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1476, 45 USPQ2d 1498, 1500 (Fed. Cir.1998). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Id.* (quoting *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993)). "In order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1199, 32 USPQ2d 1338, 1341 (Fed.Cir.1994).

Claim construction is an issue of law, *see Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo. See Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (en banc). Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *See Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998).

### B. Infringement

OSI argues that the district court erred in interpreting claim 1 of the '898 patent to cover gamma units with radiation sources and beam channels located between 0° and 30°. OSI asserts that the claim language "only within a zone extending between latitudes 30°–45°'" unambiguously excludes gamma units with radiation sources between 0° and 30°. OSI contends that, even though the preferred embodiment discloses radiation sources between 0° to 45°, claim 1 should be limited to gamma units with radiation sources located exclusively between 30° to 45° because the scope of Elekta's right to exclude is governed by the language of the claims,

not by the written description. OSI thus asserts that the district court erred in concluding as a matter of law that its RGS device literally infringes claim 1. Moreover, OSI argues that Elekta is barred by prosecution history estoppel from arguing infringement under the doctrine of equivalents, because coverage of gamma units with radiation sources in the range of 0° to 30° was surrendered in response to an obviousness rejection.

Elekta responds that the district court properly construed claim 1 as covering gamma units with radiation sources that are in a zone having an upper boundary between 30° to 45°. Elekta argues that the plain meaning of the term "extending" is "reaching," which includes 0° to 30°, and that the district court's claim construction is the only interpretation that is consistent with the claim language, the written description, and the prosecution history. Elekta contends that OSI's proposed interpretation is inconsistent with the drawings and the written description, and should not be adopted because it fails to cover the preferred embodiment and would render the claim invalid. Elekta further contends that the district court properly concluded as a matter of law that OSI's RGS device literally infringes claim 1 of the patent.

 In interpreting claims, a court should rely upon "the claim language, the written description portion of the specification, the prosecution history, and if necessary to aid the court's understanding of the patent, extrinsic evidence." *Gentry*, 134 F.3d at 1476, 45 USPQ2d at 1500. "While we have held many times that a patentee can act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning," the written description in such a case must clearly redefine a claim term "so as to put a reasonable competitor or one reasonably skilled in the art on notice that the patentee intended to so redefine that claim term." *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357, 52 USPQ2d 1029, 1033 (Fed.Cir.1999). Absent an express intent to impart a novel meaning, claim terms take on their ordinary meaning. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249, 48 USPQ2d 1117, 1121 (Fed. Cir.1998).

We agree with OSI that the district court erred in interpreting claim 1 to include gamma units with radiation sources and beam channels located "beginning at the edge of the helmet (0°) and extending to a point between 30°–45°." The district court erred in its claim construction because it did not accord the claim language its ordinary meaning. Claim 1 explicitly provides that the radiation sources and the beam channels in the gamma unit are located "*only* within a zone *extending between* latitudes 30°–45°, as seen from the diametrical plane." '898 patent, col. 3, ll. 26–27 (emphasis added). When given their ordinary meaning, the terms "only" and "extending between" unambiguously limit claim 1 to gamma units with radiation sources and beam channels located in a zone stretching exclusively in the space separating the latitudes 30° and 45°. *See, e.g.*, Webster's New World Dictionary 947 (3d ed.1988) (defining "only" as "solely; exclusively"); *see id.* at 480 (defining "extending" as "to stretch out"); *see id.* at 134 (defining "between" as "in or through the space that separates (two things)"). While Elekta argues that "extending" should be interpreted as "to reach" rather than "to stretch," we conclude that the key word is "between," and that the ordinary meaning of the phrase "only within a zone extending between" is inescapable. The claim only encompasses 30°–45°. Any other conclusion renders the reference to 30° superfluous.

 The written description does not convince us otherwise. It is true that, while "one may not read a limitation into a claim from the written description, ... one may look to the written description to define a term already in a claim limitation, for a claim must be read in light of the specification of which it is a part." *Renishaw*, 158 F.3d at 1248, 48 USPQ2d at

1120. The parties do not dispute that the written description discloses a gamma unit with radiation sources and beam channels located between the latitudes of 0° and 45°. *See, e.g.,* '898 patent, col. 2, ll. 16–22; *id.* at col. 2, l. 64 to col. 3, l. 3. However, the unambiguous language of the amended claim controls over any contradictory language in the written description.

■■■ OSI also argues that the prosecution history provides another reason why claim 1 should be limited to gamma units. with radiation sources and beam channels located exclusively between 30° and 45°. Claims that have been narrowed in order to obtain issuance over the prior art cannot later be interpreted to cover that which was previously disclaimed during prosecution. *See Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir. 1995). During prosecution, the examiner initially rejected claim 1 for obviousness, stating that:

> Applicants [sic] stated point of novelty is only the elimination of the radiation sources which are located within a zone that is near or on the longitudinal plane of the patient. Applicant claims his sources within a zone of latitudes from 30°–45°. But the prior art gamma units have sources which are located within a zone which includes 30°–45°. Applicant does not claim the zone which is exclusively 30°–45° or that his sources specifically are not at latitudes near the longitudinal plane of the patient.

Paper No. 10 at 3. In response to the examiner's rejection, the applicant amended claim 1 as follows, with additions indicated by underlining and deletions indicated by brackets:

> 1. (Amended) An arrangement in a gamma unit, . . . the radiation sources [ (9) ] and the beam channels [ (6, 19) ] . . . located, in relation to the diametrical plane [through] *extending across* the opening to said face, *only* within a zone

extending [to] *between* latitudes 30°–45°, as seen from said diametrical plane.

Paper No. 14 at 1.

Elekta argues that those amendments were made to address the examiner's concern that the original claims did not incorporate the point of novelty stated in the written description—the elimination of radiation sources near the longitudinal plane of the patient (90°), not the elimination of radiation sources between 0° and 30°. While this may explain why the term "only" was added to the claim, Elekta's explanation fails to adequately address the change from the word "to" to "between." OSI responds that the word "to" was changed to "between" in response to the examiner's statements that "prior art gamma units have sources which are located within a zone which includes 30°–45°," and that "Applicant does not claim the zone which is exclusively 30°–45°." Paper No. 10 at 3. We agree. In view of these statements from the examiner, a person of skill in the art would understand that the term "to" was changed to "between" in order to respond to the examiner's statement and to distinguish the prior art by claiming exclusively the range of 30°–45°. We therefore agree with OSI that claim 1 is susceptible of only one reasonable construction, and is limited to gamma units with radiation sources located exclusively between 30°–45°.

Elekta argues that OSI's proposed claim construction should not be adopted because it would exclude the preferred and only embodiment disclosed in the specification. We have previously stated that "[s]uch an interpretation is rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1578 (Fed.Cir.1996). That proposition is correct. However, in light of the prosecution history and the unambiguous language of the amended claim, we conclude that this is the rare case in which such an interpretation is compelled.

Elekta further argues that OSI's interpretation would render claim 1 invalid, because a gamma unit with radiation sources solely between 30°–45° would be inoperative. We do not reach the issue of invalidity, and we note that the record is unclear as to whether such a device would be inoperative. Moreover, having concluded that the amended claim is susceptible of only one reasonable construction, we cannot construe the claim differently from its plain meaning in order to preserve its validity (upon which we do not opine). *Cf. Process Control,* 190 F.3d at 1357, 52 USPQ2d at 1033 ("Where, as here, the claim is susceptible to only one reasonable construction ... we must construe the claims based on the patentee's version of the claim as he himself drafted it.").

Based on our conclusion that the district court misconstrued claim 1, we further conclude that the district court erred in concluding as a matter of law that OSI's device literally infringes claim 1. It is undisputed that OSI's RGS device does not have radiation sources and beam channels located exclusively between 30°–45°. *See Elekta,* 51 F.Supp.2d at 485 ("[A]ll of [the RGS's] radiation sources and channels fall between 14° and 43°."). Thus, no reasonable juror could find that OSI's RGS device literally infringes claim 1 of the '898 patent. Accordingly, we conclude that the district court erred in granting Elekta's motion for summary judgment of infringement, and we reverse the district court's judgment on that issue.[1]

Finally, OSI argues that its RGS device does not infringe claim 1 under the doctrine of equivalents. Because this issue was never addressed by the district court, we decline to reach it here on appeal.[2]

**1.** OSI also appeals the district court's order denying its motion for summary judgment of noninfringement. Although we ordinarily do not review a denial of such a motion, our holding today is tantamount to a reversal of that denial.

**2.** We note, however, that in light of our claim construction, a finding of infringement under

## CONCLUSION

For the above reasons, we conclude that the district court erred in construing claim 1 to cover gamma units with radiation sources and beam channels located "beginning at the edge of the helmet (0°) and extending to a point between 30°–45°." Properly construed, claim 1 is limited to gamma units with radiation sources and beam channels located exclusively between 30° and 45°. We therefore conclude that no reasonable juror could find that OSI's RGS device literally infringes claim 1, and that the district court erred in granting Elekta's motion for summary judgment of infringement. Because the district court did not address the question whether OSI's RGS device infringes claim 1 under the doctrine of equivalents, we decline to reach this issue on appeal. Accordingly, we

*REVERSE.*

the doctrine of equivalents would seemingly vitiate the clear limitation "only within a zone extending between latitudes 30°–45°" in claim 1. Moreover, in view of the prosecution history, Elekta would apparently be barred from arguing that OSI's device infringes under the doctrine of equivalents, because it surrendered the range of 0° to 30° during prosecution.