NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IRA PAZANDEH,**
*Plaintiff-Appellant*

**v.**

**YAMAHA CORPORATION OF AMERICA,**
*Defendant-Appellee*

---

2018-1275

---

Appeal from the United States District Court for the Central District of California in No. 8:16-cv-01849-JVS-DFM, Judge James V. Selna.

---

Decided: April 6, 2018

---

IRA PAZANDEH, Placentia, CA, pro se.

JEFFRY HOWARD NELSON, Nixon & Vanderhye P.C., Arlington, VA, for defendant-appellee. Also represented by SHERI LEA GORDON.

---

Before O'MALLEY, WALLACH, and HUGHES, *Circuit Judges.*

PER CURIAM.

Appellant Ira Pazandeh ("Pazandeh"), proceeding *pro se*, appeals the district court's entry of summary judgment that two audio speaker models sold by Appellee Yamaha Corporation of America ("Yamaha") do not infringe claims of U.S. Patent No. 7,577,265 ("the '265 patent") literally or under the doctrine of equivalents. He also seeks reversal of the district court's exceptional case determination. Because we conclude that the district court did not err in its construction of the term "respective . . . enclosure[s]" and further conclude that Pazandeh failed to properly appeal the district court's exceptionality determination, we *affirm in part* and *dismiss in part*.

BACKGROUND

Pazandeh owns the '265 patent, which is directed to a loudspeaker system that uses multiple "sound radiators" in a "specific arrangement resulting in a wider dispersion of sound over the full range of audio frequencies." '265 patent, col. 1, ll. 15–18. The '265 patent's independent claims, claims 1 and 4, are reproduced below:

1.  A speaker system comprising:

> *first, second and third sound radiators, each sound radiator mounted in a respective enclosure*; the second sound radiator radiating at high audio frequencies and positioned medially between the first and third sound radiators, *only the respective enclosure of the second sound radiator* having a reflective surface (reflectively dispersive shape) and having a height no greater than the height of the *respective first and third radiator enclosures*; the first and third sound radiators radiating at low to mid audio frequencies and tilted generally toward each other; the sound radiators projecting first, second and third sound vectors, respectively, with the sec-

ond sound vector oriented vertically and the first and third sound vectors directed generally toward each other al [sic] angles above the horizontal so as to intersect at an inclusive angle of between 90 and 170 degrees; the first and third sound radiators spaced horizontally apart by at least a horizontal width of the second sound radiator, the first, second and third sound radiators providing wide dispersion of sound produced by the first and third sound radiators.

4. A speaker system comprising; *first, second and third sound radiators, the sound radiators mounted in respective first, second and third mutually spaced apart sound enclosures*; the *second sound enclosure* positioned medially between the *first and third sound enclosures*, the first, second and third sound radiators projecting first, second and third sound vectors, respectively, with the second sound vector oriented vertically and the first and third sound vectors directed generally toward each other at angles above the horizontal; *only the second sound enclosure* having an upwardly facing semispherical convex reflective surface terminating upwardly above dispersion angles of the first and third sound radiators such that a portion of sound radiated from each of the first and third sound radiators is reflected from the reflective surface; the second sound vector directed away from the reflective surface.

*Id.* col. 6, ll. 26–47 (emphasis added); col. 6, l. 66–col. 8, l. 6 (emphasis added).

On October 6, 2016, Pazandeh, at the time represented by counsel, sued Yamaha in the U.S. District Court for the Central District of California, accusing the company's

ID Series and STM M28 audio speakers ("the accused speakers") of infringing claims 1 and 4 of the '265 patent.[1] Thereafter, the parties engaged in discovery, and Pazandeh served formal infringement contentions on Yamaha in May 2017. **[JA 144–170]** After receiving these infringement contentions, Yamaha moved for summary judgment of noninfringement, arguing, among other things, that the accused speakers do not contain "respective . . . enclosure[s]," as this term is properly construed. J.A. 82–91. According to Yamaha, the proper construction of this term requires that each sound radiator be mounted in its own, separate enclosure, and because it is undisputed that the accused speakers are mounted in a single cabinet, there can be no infringement. **[JA 82–91]**

On July 25, 2017, the district court granted Yamaha's motion for summary judgment. *See generally Pazandeh v. Yamaha Corp. of Am.*, No. SACV 16-01849 JVS, 2017 WL 6940551 (C.D. Cal. July 25, 2017). The court began its analysis by construing the term "sound radiator" to mean "at least one loudspeaker and not just the diaphragm of the loudspeaker." *Id.* at *4–5. It then construed the term "respective . . . enclosure[s]" to mean "that each sound radiator is mounted in its own cabinet or housing," rejecting Pazandeh's argument that the term should be construed to mean that "each sound radiator is mounted so that it is acoustically directed and oriented as claimed." *Id.* at *5–6. In reaching this construction, the district court examined the plain language of the claims, in addi-

---

[1] Pazandeh also asserted a claim under California's Unfair Competition Law ("UCL"), but did not amend his operative pleading after the district court dismissed this cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* J.A. 19, 64–65. He does not argue on appeal that the dismissal of his UCL claim should be reversed.

tion to the '265 patent's specification and prosecution history. *Id.* at *5–8. The district court concluded that, because there is no dispute that the accused speakers have loudspeakers that are housed in a single, hollow cabinet, the speakers do not satisfy the claims' requirement that each sound radiator be contained within a "respective enclosure," and therefore do not literally infringe the claims. *Id.* at *8–9. And, "even if the devices project sound similarly to the '265 patent," as Pazandeh argued, "they do not infringe [under] the doctrine of equivalents because each device's single cabinet materially differs from the three respective enclosures," such that Pazandeh's argument "would render the 'respective enclosure' requirement meaningless." *Id.* at *9.

Thereafter, Yamaha moved for its attorneys' fees pursuant to 35 U.S.C. § 285. **[JA 33]** The district court granted Yamaha's motion, finding the case "exceptional" in view of evidence that Pazandeh did not perform an adequate pre-suit investigation, did not conduct a reasonable post-filing infringement analysis, and advanced meritless and unsupported infringement arguments. J.A. 372–73.

We have jurisdiction under 28 U.S.C. § 1295(a)(1) (2012).

## DISCUSSION

Pazandeh raises three arguments on appeal. First, he contends that the district court erred in its construction of the "respective . . . enclosure[s]" limitation, submitting that the word "respective" simply describes the spatial relationship between the sound radiators. Appellant Br. 5–6, 8–9. Second, he argues that the district court improperly entered summary judgment in Yamaha's favor on the question of whether the accused speakers infringe claims 1 and 4 of the '265 patent under the doctrine of equivalents, contending that the accused speakers "perform the same function by the same means to yield the

same results." *Id.* at 13. Finally, he asks this court to reverse the district court's "exceptional case" determination. *Id.* at 15. We address these arguments in turn.

## A. "Respective . . . Enclosure[s]"

Pazandeh raises three arguments why he believes the district court erred in its construction of the "respective . . . enclosure[s]" limitation. First, he contends that the '265 patent uses the word "respective" to refer to the orientation or arrangement of the sound radiators, which is confirmed by the Merriam-Webster online dictionary's definition of the word. *Id.* at 8–9. He also claims that the district court erred in failing to consider the declaration of his expert, John Koval. *Id.* at 12. Finally, he argues that, because the terms "respective enclosure" and "respective enclosures" do not appear in the written description of the '265 patent, the claims do not require separate enclosures. *Id.*

"[T]he ultimate issue of the proper construction of a claim should be treated as a question of law." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 839 (2015). To ascertain the scope and meaning of the asserted claims, we look to the words of the claims themselves, the specification, the prosecution history, and any relevant extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315–17 (Fed. Cir. 2005) (en banc). We review any "subsidiary factual findings [on extrinsic evidence] under the 'clearly erroneous' standard." *Teva*, 135 S. Ct. at 839. "[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction de novo." *Id.* at 841.

In this case, the district court correctly observed that Pazandeh failed to provide any evidence to support his proposed construction that "each sound radiator is

mounted so that it is acoustically directed and oriented as claimed." *Pazandeh*, 2017 WL 6940551 at *6. Pazandeh does not provide any such intrinsic evidence on appeal that supports his reading. Moreover, his expert, Mr. Koval, did not offer any opinion on the meaning of the term "respective" recited in the claims. *Cf.* J.A. 333. In any event, we agree with the district court's conclusion that Pazandeh's proposed construction improperly reads out the claims' requirement that each sound radiator be mounted in a "respective" enclosure. *See Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000).

Moreover, we agree with the district court that the claims, specification, and prosecution history employ the phrase "respective . . . enclosure[s]" in a manner consistent with the plain meaning of these words. The claims recite first, second, and third "sound radiators" mounted in "respective . . . enclosure[s]," and specify particular characteristics for each enclosure that suggest they are separate. '265 patent col. 6, ll. 31–34; *id.* at col. 6, l. 66–col. 7, l. 3. For example, as the district court correctly pointed out, claim 1 states that only the second sound radiator's "respective enclosure" has a "reflective surface" and has "a height no greater than the height of the respective first and third radiator enclosures." *Id.* at col. 6, ll. 31–34. Similarly, claim 4 states that the enclosures are "mutually spaced apart," with "the second enclosure positioned medially between the first and third sound enclosures." *Id.* at col. 7, ll. 1–3.

The specification similarly describes the enclosures' physical characteristics, reinforcing the conclusion that each enclosure is a separate structure. For example, when discussing Figure 1, the specification describes the sound radiators as "preferably common loudspeakers mounted in speaker cabinets" and states that "the enclosure of the second sound radiator 20 preferably presents a curved surface" that suppresses "the radiation of sound

that bounces . . . between the several radiator enclosures." *Id.* at col. 4, ll. 24–25; *id.* at col. 5, ll. 8–9, 22–23. Other figures depict physical separation between each sound radiator, suggesting that each sound radiator's respective enclosure is a separate cabinet. *Id.* at Figs. 2, 3, 4a, 4b. Together, these descriptions suggest that the radiators' enclosures are separate physical structures that have outer surfaces exposed to the other radiators' sound.

Finally, the prosecution history confirms that "respective . . . enclosure[]" means a separate enclosure for each sound radiator. "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). During prosecution, Pazandeh amended his claims by adding the term "respective . . . enclosure[]" to overcome obviousness challenges, arguing that a particular reference does not disclose or suggest, among other things, "that sound radiators mounted in *respective* first, second and third mutually spaced apart sound enclosures." J.A. 208–09 (emphasis added). Following this amendment, the Patent and Trademark Office issued a notice of allowance, with the examiner noting that although "[s]peaker systems with reflective surfaces or surfaces used to shape speaker output are well known in the art," he could not find prior art that suggested the claimed "combination of the second sound radiator radiating at high audio frequencies and positioned medially between the first and third sound radiators, only the *respective enclosure* of the second sound radiator having a reflective surface [and] the first and third sound radiators radiating at low to mid audio frequencies and tilted generally toward each other." J.A. 223–24.

Finally, we owe deference to the district court's fact-findings, all of which are based on dictionary definitions, (1) that the plain meaning of "enclosure" is "something that encloses (as a barrier)"; (2) that the plain meaning of

"respective" is "separate"; and (3) that the plain meaning of "respective enclosure" is therefore "something separate that closes something else in." *Pazandeh*, 2017 WL 6940551 at *8. Although Pazandeh argues that the Merriam-Webster online dictionary includes other definitions of "respective" that support his preferred construction, *see* Appellant Br. 11–12, all of the definitions found in the webpage he offers relate to "separateness," *see id.* at 14. Therefore, the district court did not clearly err in relying on these dictionary definitions.

Because the district court did not err in its construction of the term "respective . . . enclosure[s]," and because Pazandeh does not separately argue that the district court erred in its literal infringement analysis, we *affirm* the district court's summary judgment that the accused speakers do not literally infringe.

## B. The Doctrine of Equivalents

Pazandeh next argues that the district court erred by failing to consider that sound radiators housed in a single enclosure "substantially perform the same function by the same means to yield the same results." Appellant Br. 13. We disagree.

Infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). On appeal from a grant of summary judgment of noninfringement, we determine whether, after resolving reasonable factual inferences in favor of the patentee, the district court correctly concluded that no reasonable jury could find infringement. *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000).

The only evidence that Pazandeh introduced regarding infringement under the doctrine of equivalents came in the form of a one-page declaration from Dr. Koval, who opined that, "[i]n loudspeaker design, if two identical

speakers (drivers) are in two adjacent identical enclosures, acoustically the system is the same as the two drivers in a single larger cabinet with twice the volume of one of the single cabinets." J.A. 333 ¶ 6. As the district court correctly found, this testimony is entirely conclusory, and is therefore insufficient to demonstrate that there is a genuine dispute of material fact as to infringement under the doctrine of equivalents. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) ("It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact, and that a party may not avoid that rule simply by framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device.").

Even if we were to assume that Dr. Koval's opinion had adequate support, it would not support a cognizable legal theory. Although infringement under this doctrine is a question of fact, "if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997); *see also Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) ("[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents." (citation omitted)). Pazandeh's theory would vitiate the "respective . . . enclosure[s]" limitation that he added during prosecution in order to overcome the prior art. We therefore *affirm* the district court's summary judgment that the accused speakers do not infringe under the doctrine of equivalents.

### C.  Exceptional Case Determination

Finally, Pazandeh asks the court to reverse the district court's exceptional case finding and award of attorneys' fees. Appellant Br. 15. He did not oppose Yamaha's fees motion below, does not offer any reason for reversing the exceptionality finding in his opening brief, and does not challenge the court's finding that he failed to perform an adequate pre-suit investigation. J.A. 370–72. He also failed to properly appeal the district court's exceptionality determination, as his notice of appeal does not identify the order containing this determination as one he is appealing. *See* Fed. R. App. P. 3(c)(1)(B) ("The notice of appeal must . . . designate the . . . order . . . being appealed."). Although Rule 3(c)(1)(B)'s designation requirement is jurisdictional, *see Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012), courts construe the designation requirement liberally. Thus, "[a] mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced." *Sanabria v. United States*, 437 U.S. 54, 67 n.21 (1978).

On these facts, we find that Yamaha would be prejudiced by having to defend the district court's exceptionality determination. Pazandeh neither opposed Yamaha's fees motion below, nor included any argument regarding the merits of the district court's determination in his opening appeal brief. Furthermore, he has not presented any evidence suggesting that he conducted an adequate pre-suit investigation. We therefore decline to consider the merits of the district court's exceptionality determination.

### CONCLUSION

For the foregoing reasons, we *affirm* the district court's summary judgment of noninfringement. We *dismiss* Pazandeh's request for reversal of the district

court's exceptionality determination under 35 U.S.C. § 285.

**AFFIRMED IN PART, DISMISSED IN PART**