THE COCA–COLA COMPANY,
Plaintiff,

v.

PEPSI–COLA COMPANY, a Division
of PepsiCo, Inc., and PepsiCo,
Inc., Defendants.

Civil Action No. 1:05–CV–1167–RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 9, 2007.

Order on Reconsideration July 24, 2007.

Bruce William Baber, Courtland Lewis Reichman, Joseph R. Bankoff, Shaun Sethna, Alan Shane Nichols, Russell Edward Blythe, King & Spalding, LLP, Atlanta, GA, Michael J. Kline, The Coca–Cola Company, Atlanta, GA, for Plaintiff.

Candice C. Decaire, George L. Murphy, Jr., Audra Ann Dial, Corin M. McCarthy,

Michael Allen Bertelson, Michael A. Kaeding, Kilpatrick Stockton, Atlanta, GA, for Defendants.

## ORDER

STORY, District Judge.

This matter comes before the Court on Plaintiff's Motion to Reopen Case [199]; Plaintiff's Motion for Reconsideration [201]; and Plaintiff's Motion for Discovery [202]. After reviewing the entire record, the Court now enters the following Order.

Plaintiff The Coca–Cola Company ("Coke") moves for reconsideration of this Court's Order of July 24, 2007[197], granting summary judgment in favor of Defendants Pepsi–Cola Company and PepsiCo, Inc. (collectively "PepsiCo") on Coke's claim that the Helical Coil Bag infringes U.S. Patent No. 5,749,493 (the "'493 Patent").

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." LR 7.2(E), NDGa. Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F.Supp.2d 1256, 1258–59 (N.D.Ga.2003).

In support of its Motion for Reconsideration, Coke argues that, in awarding PepsiCo summary judgment, this Court improperly changed the meaning of the claim construction given to the "secured inside of said bag" limitation contained in the '493 Patent, which was previously adopted by this Court in the Rapak Case, *see The Coca–Cola Co. v. Pepsi–Cola, Inc.*, No. 1:02–CV–2887–RWS, 2004 WL 4910334 (N.D.Ga. Sep. 29, 2004), and agreed upon by the parties as their joint claim construction for purposes of this action. (*See* Joint Claim Constr. St. [82–1] at 2.) Coke observes that the Court, on one occasion, mistakenly quoted the claim construction statement as defining "secured inside of said bag" to mean "adhered *to* or integral with the wall of the bag," when it in fact states the definition as "adhered or integral with the wall of the bag."[1] (*See* Order of Jul. 24, 2007[197] at 36.) Coke also argues that the Court's use of the preposition "to" in its analysis of the parties' joint claim construction reflects that it adopted a new claim construction.

The Court did not change the meaning of the "secured inside of said bag" limitation, and declines to reconsider its Order of July 24, 2007, on that basis. The "secured inside of said bag" limitation, as the parties have agreed, requires that the evacuation device at issue be "adhered or integral with the wall of the bag." (Pl.'s Ex. 6 at 8.) In its Order of July 24, 2007, the Court concluded that the construction "adhered or integral with the wall of the bag" requires, by its plain language, "that the evacuation device be connected directly to the wall of the bag...." (Order of Jul. 24[197] at 36.) In so doing, the Court noted that the "wall of the bag is a distinct structure explicitly described in the '493 Patent as a separate component than the spout of the bag." (*Id.*) Thus, the requirement that the evacuation device be either "adhered or integral *with the wall of the bag*" means that the '493 Patent contemplates adherence or integration with the bag wall-a feature not present in the Helical Coil Bag.[2] Finding no reason to depart

---

1. The Court acknowledges a scrivener's error on page 36 of its Order of July 24, 2007, in which it misquoted the claim construction as including the word "to" following the word "adhered." The Court, however, properly quoted the joint claim construction statement in the remainder of its Order.

2. The Court did not find it necessary in its Order of July 24, 2007, to grammatically de-

from that conclusion, the Court declines to reconsider that aspect of its Order.

Coke also takes issue with an observation the Court made in its infringement analysis that a significant feature which differentiates the bags protected by the '493 Patent from the bags that pre-dated the '493 Patent is that '493 Patent bags contain evacuation devices which are connected directly to the bag wall, as opposed to some pre-'493 Patent devices, which contained evacuation devices that terminated coaxially in the spout. (*See* Order of Jul. 24, 2007 at 36–37.) Coke contends that the Court improperly considered prosecution history and prior art in applying the joint claim construction to the Helical Coil Bag.

The Court disagrees, and declines to reconsider its decision on this basis. Although the Court provided a factual and historical context to the preferred embodiment of the '493 Patent and its predeces-

sors, the Court relied exclusively on the plain language of the claim construction agreed upon by the parties to conclude that PepsiCo's Helical Coil Bag did not literally infringe an essential limitation of the '493 Patent as a matter of law. (*Id.* at 36.) It also relied exclusively on the plain language of the claim construction in concluding that Coke's claim under the doctrine of equivalents failed the all-elements rule, and explicitly declined to consider PepsiCo's argument raising prosecution history estoppel. (*See* Order of Jul. 24, 2007[197] at 39 n. 9.) Because the Court did not rely on prosecution history estoppel or prior art to conclude that the Helical Coil Bag does not infringe the '493 Patent as a matter of law, but rather relied exclusively on the plain language of the joint claim construction, the Court declines to reconsider its Order on that basis.

The Court has reviewed Coke's remaining arguments in support of reconsideration, including its contention that a ques-

---

construct the phrase "adhered or integral with the wall of the bag." Nevertheless, to correct Coke's misunderstanding, the Court does so here.

The prepositional phrases "with the wall of the bag" modify both "adhered" and "integral." Accordingly, the "secured inside" limitation of the '493 Patent, as previously defined by this Court and accepted by the parties, requires that the evacuation device be either (1) "adhered ... with the wall of the bag" or (2) "integral with the wall of the bag." It does not require, as Coke contends, that the evacuation device be either (1) "adhered" [to an unidentified object within the bag, such as the cage device within the spout], or (2) "integral with the wall of the bag."

Coke's contention that the word "adhered" stands alone ignores the clear meaning of the construction of these terms in the *Markman* Order entered in the Rapak case and agreed upon by the parties in this case. Under Coke's own definition, "[t]he plain meaning of 'adhered' is 'to hold fast or stick by as if by gluing, suction, grasping, or fusing.'" (*See* Coke's Mot. for Recons. [201–2] at 7 (citing

Webster's Third New Int'l Dictionary (unabridged) 1993, Merriam–Webster, Inc. (emphasis removed)).) The word "adhered" is a participle, which, as it is used in the claim construction, describes the condition of one object grasping or fusing to another object. In its natural use, the word "adhered" is followed by a prepositional phrase containing the object of adherence, which describes what the subject noun is adhered "to" or "with." That phrase is provided in the claim construction: the evacuation device is adhered "with the wall of the bag."

Insofar as the Court interchanged in its discussion the preposition "with," which is provided in the parties' claim construction, with the preposition "to," in describing the helical coil's adherence to/with the wall of the bag, it did not change the meaning of the claim construction. As it applies in this case, the meaning of the phrase "adhered ... *with* the wall of the bag" is synonymous with and legally indistinguishable from "adhered to the wall of the bag." Both require *some physical connection* to the wall of the bag—a characteristic lacking in the Helical Coil Bag and fatal to Coke's infringement claim.

tion of fact exists concerning infringement under the doctrine of equivalents. It concludes that these arguments are not properly raised in a Motion for Reconsideration because they "repackage familiar arguments to test whether the court will change its mind." *Bryan*, 246 F.Supp.2d at 1259. In any event, they are without merit.

### Conclusion

For the reasons provided above, Plaintiff's Motion to Reopen Case [199]; Plaintiff's Motion for Reconsideration [201]; and Plaintiff's Motion for Discovery [202] are **DENIED.**

**SO ORDERED.**

### *ORDER*

This matter comes before the Court on Defendants' Motion for Summary Judgment [90], Defendants' Motion to Compel Deposition Responses of Michael Kline [126], Defendants' Motion for Leave to File Excess Pages [134], and Defendants' Motion to Compel [183]. As an initial matter, Defendants' Motion for Leave to File Excess Pages [134] is **GRANTED** *nunc pro tunc.* After reviewing the entire record, the Court now enters the following Order.

### Background

This is a patent infringement action. Plaintiff Coca–Cola Company (hereinafter "Coke") claims that a device known as the Helical Coil Bag, which Defendants Pepsi–Cola Company and Pepsico, Inc. (hereinafter collectively "PepsiCo") use to distribute soft drink products, infringes U.S. Patent No. 5,749,493 (the " '493 Patent"), of which Coke is the assignee. This is the third in a series of lawsuits in which Coke has sought to enforce its '493 Patent against PepsiCo and its suppliers. *See The Coca–Cola Co. v. Liqui–Box Corp.*, No. 1:99–CV–875–ODE (N.D. Ga. filed Apr. 5, 1999) (the "Liqui–Box Case") (accusing Liqui–Box's "dip strip" bag); *The Coca–Cola Co. v.*

*PepsiCo, Inc.*, No. 1:02–CV–2887–RWS, 2004 WL 4910334 (N.D.Ga. Sep. 29, 2004) (the "Rapak Case" or *Rapak Litig.*) (accusing Rapak LLC's "evacufilm" bag and "tube" bag).

### I. Bag Technology

The devices at issue in this litigation, like in the previous two cases, are collapsible containers ("bags") used to package and dispense liquid products. Such bags are generally composed of three features: (1) bag walls comprised of two bonded flexible plastic sheets; (2) a spout bonded to one of the bag walls: and (3) an elongated evacuation device designed to channel liquid outside of the spout during dispensation. Collapsible bags have gained widespread use in the soft drink industry and are often employed inside fountain drink machines. The bags are filled with soft drink syrup concentrates, and the bag is attached to a dispensing fountain including a fountain valve. When the valve is opened, the syrup concentrate is pumped through the spout into the valve where it is mixed with carbonated water to produce a soft drink.

Collapsible bags similar to those at issue in this litigation have been used in the industry for quite some time. Historically, such bags often either lacked any form of evacuation device, resulting in liquid being trapped in "pockets" within the bag walls as the walls would collapse, or contained evacuation mechanisms known in the industry as "dip tubes." Such "dip tubes" tended to terminate coaxially into the spout opening of the bags, to reach down to the bottom of the bag, and to draw liquid through the tube from the bottom of the bag throughout evacuation. These conventional bags, as noted in the '493 Patent, have their disadvantages. Besides leaving pockets of non-dispensed liquid, bags containing evacuation devices which

terminate coaxially at the spout generally require manual assembly—resulting in a potentially less efficient production process and an increased likelihood of defective production. *See Rapak Litig.*, No. 1:02–CV–2887–RWS, 2004 WL 4910334, at *2.

The device described in Coke's '493 Patent improves on its predecessors in several ways. The preferred embodiment of the '493 Patent, for example, includes an evacuation device that is assembled entirely by automated means, resulting in a potentially more efficient and more streamlined production process. (*See* '493 Patent, Figure 1.) The patented device is also unlike its predecessors in that its evacuation device does not terminate coaxially into the spout of the bag, but rather runs perpendicular to the axis of the spout. In the preferred embodiment, the evacuation device consists of a pair of elongated ribs that are transverse to the spout opening, and are secured to the interior of the bag walls during the bag manufacturing process. The ribs are firmly adhered to the walls of the bag, preventing the bag from collapsing on itself and helping to avoid the entrapment of liquid in "pockets" inside the bag. (*See* '493 Patent at col. 1, ll. 53–55 ("It is another object of the present invention to provide a conduit which can be integrally formed on the interior surface of the collapsible container.").)

## II. The Patent–In–Suit

Coca–Cola claims that the Helical Coil Bag infringes Claims 1 and 14 of the '493 Patent. Claim 1 of the '493 Patent recites:

1. A method for producing a disposable flexible bag for use in containing and dispensing a liquid and including a spout having an opening through which the bag is to be filled and emptied, and said bag also including a liquid passage means inside of said bag for providing at least one elongated liquid channel open to the interior of said bag and in liquid

flow communication with said spout opening as said bag progressively collapses against said liquid passage means, said method comprising the steps of:

a) providing flexible bag wall means for use in forming said bag;

b) providing a spout in said bag wall means having an opening therethrough and a longitudinal axis substantially perpendicular to said bag wall;

c) positioning said liquid passage means having said liquid channel inside of said bag wall means prior to forming said bag wall means into a bag;

d) positioning said liquid passage means inside of said bag wall means such that when said bag wall means are formed into a bag having no liquid contained therein, *said liquid channel of said liquid passage means will be in liquid flow communication with said spout opening and transversely disposed thereto, substantially perpendicular to said longitudinal axis of said spout;* and

e) forming said bag wall means into a bag with said spout being connected through a bag wall, with said liquid passage means being *secured inside of* said bag to maintain said elongated channel in liquid flow communication with said opening in said spout.

(*See* '493 Patent at claim 1 (emphasis added).)

Claim 14 of the '493 Patent claims:

14. A disposable, flexible bag for use in containing and dispensing a liquid, said bag being flat in an unfilled condition thereof, comprising:

a) a bag having a bag wall;

b) a spout having a spout opening therethrough attached to said bag wall and having a longitudinal axis substantially perpendicular to said bag wall; and

c) an elongated fluid passage member *secured inside of said bag* and having at least one open fluid passageway therealong in liquid communication with said spout opening, said member lying substantially flat within a flat bag wall when the bag is empty and before it is filled with liquid, *said fluid passageway being transversely disposed across said spout opening substantially perpendicular to the longitudinal axis of said spout* before said bag is filled with liquid and being open to the interior of said bag along its length and having a depth and a width such that as the bag wall collapses against said member during withdrawal of liquid from the bag, the bag wall cannot extend into and block said passageway, such that the passageway remains open to permit complete withdrawal of liquid from the bag.

('493 Patent at claim 14 (emphasis added).)

### III. The Accused Device: The Helical Coil Bag

Coke asserts that Liqui–Box's Helical Coil Bag, which is purchased and used by PepsiCo to dispense soft drinks, infringes the '493 Patent. The Helical Coil Bag, like the preferred embodiment of the '493 Patent, is a collapsible plastic container of a basically rectangular shape (when unfilled) containing a spout structure on one of its side walls. (*See* Ex. A to Bergenthun Aff. [92].) The Helical Coil Bag is made up of five components: (1) two bag walls comprised of two flexible plastic sheets; (2) a spout bonded to one of the bag walls, (3) several plastic components within the spout, including a slider, an internal valve, and a cap; (4) a flexible plastic cage that is snapped into a circular groove within the center of the spout; and (5) an evacuation device made up of a flexible plastic helical coil that connects to the center of the cage (which, as described previously, is in turn snapped into the center of the spout).[1] (*See* Defs.' Statement of Mat. Facts [91] (hereinafter "DSMF") ¶ 71; Pl.'s Statement of Mat. Facts [116–2] (hereinafter "PSMF") ¶ 71.) The Helical Coil Bag is manufactured by both automated means and manual means. After the plastic cage and helical coil are manufactured in Liqui–Box's Upper Sandusky, Ohio facility, those components are sent either to Liqui–Box's Ashland, Ohio facility or to its Sacramento, California facility to be snapped into the spout of one of the plastic bag walls, a process requiring limited human involvement. (DSMF ¶¶ 72–78; PSMF ¶¶ 72–78.) Then, the two bag walls are heat sealed at their peripheries by automated means to form a finished Helical Coil Bag. (DSMF ¶¶ 77; PSMF ¶ 77.)

A feature of the Helical Coil Bag that is notably similar to the predecessors of the '493 Patent but distinct from the preferred embodiment of the '493 Patent is that its evacuation device, the plastic helical coil, terminates coaxially into the center of spout.[2] (DSMF ¶¶ 78; PSMF ¶ 78.)

---

1. Both parties refer only to four components, labeling both the spout and its plastic components as "the fitment." For ease of reference, the Court describes the fitment as comprised of two separate components: the spout and its plastic accessories.

2. Coke strains to contest this characterization by stating that "the helical coil and cage assembly are not attached in a coaxial manner to the spout, but rather the helical coil and cage assembly are attached in a manner such that in a flat, unfilled bag the channel created by the helical coil is perpendicular to the axis of the spout." (PSMF ¶ 78.) But in doing so, Coke conflates the evacuation device—the helical coil assembly—with the liquid channels it creates. As the Court discusses in detail below, while a factual dispute exists concerning which direction the *liquid channels* caused by the helical coil run in proportion to the spout, there is no dispute that the *evacuation device* itself—the helical coil—terminates coaxially into the center of the spout, vis-á-vis the plastic cage.

Also unlike the ribs in the preferred embodiment of the '493 Patent, the helical coil is not bonded or adhered to the plastic bag walls. It is connected only by being snapped into the center groove of the spout, and thus can rotate freely within the bag.

## Discussion

### I. PepsiCo's Motion for Summary Judgment

PepsiCo moves for summary judgment on three principal grounds. First, PepsiCo argues that the compulsory-counterclaim mandate of Rule 13(a) of the Federal Rules of Civil Procedure precludes Coke from pursuing its claims in this action because those claims should have been raised in response to PepsiCo's non-infringement counterclaim in the Rapak Case. Second, PepsiCo argues that the Helical Coil Bag does not infringe Coke's '493 Patent because the liquid channel(s) created by the helical coil is (are) not "substantially perpendicular" to the longitudinal axis of the spout as required by Claims 1 and 14 of the '493 Patent. And third, PepsiCo argues that the helical coil is not "secured inside" of the bag, as those terms have been previously defined by this Court and agreed upon by the parties, because it is not "adhered or integral with" the walls of the bag. After reviewing the standard on summary judgment, the Court addresses each argument in turn.

### A. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Summary judgment is as available in patent cases as in other areas of litigation." *See Cont'l Can Co. USA, Inc. v. Monsanto Co.,* 948 F.2d 1264, 1265 (Fed.Cir.1991) (*citing Chore–Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 778–79 (Fed.Cir.1983)).

### B. Rule 13(a) Claim Preclusion

PepsiCo's first contention in support of summary judgment is that Coke's infringement claim concerning the Helical Coil Bag has been waived because Coke failed to assert it in response to PepsiCo's broad counterclaim of non-infringement in the Rapak Case.

Coke filed its complaint in the Rapak Case on October 22, 2002, alleging that the "evacufilm bag" and the "tube bag," which were both manufactured at the time by Rapak, LLC and used by PepsiCo, infringed Coke's '493 patent. *See Rapak Litig.,* No. 1:02–CV–2887–RWS (filed Oct. 22, 2002). Coke made no allegations concerning the Helical Coil Bag at the commencement of that litigation because, as PepsiCo concedes, Coke was not aware that PepsiCo was using the Helical Coil Bag at the time it filed suit. (*See* Defs.' Br. in Supp. of Mot. for Summ. J. [90] at 17 n.8 (stating that Pepsi "is not moving for summary judgment based on [Coca–Cola's] knowledge at the time it commenced the Rapak litigation").) Nevertheless, PepsiCo contends that during the ensuing litigation,

despite its own vigorous efforts to resist disclosing any information regarding its use of the Helical Coil Bag, Coke learned of its use of that device and thus became obligated to pursue the infringement claim now at issue in this case.

On December 12, 2002, PepsiCo answered and filed a counterclaim requesting a general declaration of non-infringement of the '493 Patent. (*See* Pl.'s Ex. 35 to Mot. for Summ. J. [90] [hereinafter "Pl.'s Ex."] at 15–16; *Rapak Litig.*, No. 1:02–CV–2887–RWS, Docket No. 15.) The Counterclaim alleged that "PepsiCo does not infringe any valid claim of the '493 Patent." *Id.* After obtaining leave of Court, on December 1, 2003, PepsiCo amended its answer and counterclaim to add an affirmative defense of inequitable conduct and improper inventorship. In its amended answer and counterclaim, Pepsi repeated its general request for a declaration of non-infringement, using the identical allegation it incorporated into its December 12, 2002, Counterclaim.

PepsiCo contends that, by the time it filed its last amended counterclaim on December 1, 2003, Coke had become aware of PepsiCo's use of the Helical Coil Bag. For example, PepsiCo points to the July 2003 deposition of Stephen J. Longfield, one of Pepsi's 30(b)(6) witnesses in the Rapak litigation, during which Mr. Longfield informed Coke that Pepsi had entered into an agreement with Liqui–Box for the purchase of Helical Coil Bags. (PSMF ¶ 109; DSMF ¶ 109.) Chelton D. Tanger, Coke's damages expert in the Rapak Litigation, also "made reference to Pepsi's use of the helical coil bag" in a report dated October 15, 2003. (PSMF ¶ 116; DSMF ¶ 116.) Pepsi's in-house counsel, Elizabeth Bilus, also stated in her deposition on December 4, 2003, that Pepsi was using the Helical Coil Bag. (PSMF ¶ 121; DSMF ¶ 121.)

Relying on *Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.,* 347 F.3d 935 (Fed.Cir.2003), PepsiCo claims that Coke's knowledge of PepsiCo's use of the Helical Coil Bag triggered Rule 13(a)'s requirement that Coke file a counterclaim alleging that the Helical Coil Bag infringed the '493 Patent. In response, Coke argues that the Helical Coil Bag was not a part of the same transaction or occurrence as the claims at issue in the Rapak Case because it required consideration of new issues of law and fact and new evidence not present in the prior litigation.[3] In any event, Coke argues, PepsiCo is both judicially and equitably estopped from raising Rule 13(a) because it continuously and successfully maintained that the Helical Coil Bag was not relevant to the Rapak Case.

For the reasons that follow, the Court concludes that Rule 13(a) does not preclude Coke's claims in this case, and in any event, judicial estoppel precludes PepsiCo from now claiming that the Helical Coil Bag was at issue in the Rapak Case.

1. *Rule 13(a) Was Not Triggered Because PepsiCo's Broad Non–Infringement Counterclaim Did Not Place the Helical Coil Bag at Issue in the Rapak Case.*

 Rule 13(a) of the Federal Rules of Civil Procedure requires that a party file a counterclaim if it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a). In patent litigation, where one party brings a claim seeking a declaration of non-infringement, a claim is compulsory under Rule 13(a)

---

**3.** Coke also argues that PepsiCo has failed to demonstrate that Coke had sufficient knowledge of PepsiCo's use of the Helical Coil Bag to trigger Rule 13(a). Because of the Court's disposition below, the Court does not decide whether Coke had such knowledge as a matter of law.

when it: (1) raises the same issues of law and fact as did the declaratory judgment claim of noninfringement; (2) requires the examination of the same evidence analyzed in the declaratory judgment claim of non-infringement; and (3) involves a logical relationship to the declaratory judgment claim of noninfringement. *Polymer Indus.*, 347 F.3d at 937 (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 801 (Fed.Cir.1999)). Thus, in general, "a claim for a declaration of noninfringement makes a counterclaim for patent infringement compulsory." *Polymer Indus.*, 347 F.3d at 938; *see also Vivid Techs.*, 200 F.3d at 802 ("[W]hen the same patent is at issue in an action for declaration of noninfringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived."). A party's failure to file a compulsory counterclaim operates to waive the claim in future litigation. *Id.* at 938.

The Federal Circuit recently treated Rule 13(a) in the patent context in *Polymer Industrial Products*, 347 F.3d at 937. The plaintiff, PIPCO, brought an action against Bridgestone/Firestone alleging that Bridgestone's "Skim-1" turn-over bladder infringed PIPCO's '331 Patent. *Id.* Bridgestone counterclaimed, seeking a declaration that its "Skim-1" product did not infringe the '331 Patent. Two years later, Bridgestone amended its answer, adding a counterclaim seeking a declaration that its "Skim-2" bladder, which Bridgestone had recently developed and begun to use, also did not infringe the '331 Patent. Despite this additional non-infringement claim, PIPCO did not amend its complaint to assert an infringement claim specifically relating to the "Skim-2" product. *Id.*

After the resolution of the first action, PIPCO filed a second action claiming that the "Skim-2" bladder infringed the '331 patent. Bridgestone moved to dismiss, ar-

guing that the action was barred by Rule 13(a) because PIPCO had failed to file an infringement claim in response to Bridgestone's non-infringement claim relating to the "Skim-2" device. The Federal Circuit agreed. Rule 13(a), the court reasoned, "makes an infringement counterclaim to a declaratory judgment action for noninfringement compulsory." Thus, "PIPCO's affirmative claim of patent infringement in the prior litigation involving the same patent and the same accused product was compulsory." *Id.* at 937–38.

■ At its minimum, *Polymer Industrial Products* stands for the fairly unremarkable proposition that, when a party seeks a declaration of non-infringement concerning a specific patent *and specific product*, an infringement claim concerning that same patent and product is a compulsory counterclaim under Rule 13(a). Because such claims involve identical factual and legal issues, require proof by the same evidence, and have a "logical relationship," they are compulsory counterclaims under Rule 13(a).

PepsiCo argues, however, that *Polymer Industrial Products* stands for a much broader conception of the preclusive effect of Rule 13(a) in patent cases. Relying on the district court's opinion in *Kim v. Sara Lee Bakery Group, Inc.*, 412 F.Supp.2d 929, 935 (N.D.Ill.2006), PepsiCo contends that Rule 13(a) requires that a party, in response to a broad and non-product-specific claim seeking a declaration of noninfringement, "allege all known, but previously unasserted, claims of infringement" concerning any and all products suspected to infringe the patent at issue. (Defs.' Mot. for Summ. J. [90] at 17.) Because, PepsiCo claims Coke learned prior to amending its answer in December 2003 that PepsiCo was using the Helical Coil Bag in addition to the evacufilm and tube bags already at issue, it was obligated

under Rule 13(a) to bring an infringement claim concerning the Helical Coil Bag when Pepsi broadly counterclaimed that "PepsiCo does not infringe any valid claim of the '493 Patent." *See* Pl.'s Ex. 35 at 15–16; *Rapak Litig.*, Docket No. 15.

The Court disagrees with PepsiCo's reading of *Polymer Indus.* and Rule 13(a). First, as noted above, unlike the generalized non-infringement claim in the Rapak Case, the claim seeking a declaration of non-infringement in *Polymer Industrial Products* was product-specific. 347 F.3d at 937–38. Bridgestone had in the prior case sought a specific declaration that its "Skim–2" product did not infringe PIP-CO's '331 Patent. *Id.* In finding the second claim precluded, the Federal Circuit reasoned that a counterclaim alleging that the Skim–2 product infringed the '331 Patent arose out of the same transaction or occurrence as Bridgestone's non-infringement claim. Thus, emphasizing that PIP-CO's "affirmative claim of infringement *involv[ed] the same patent and the same product*" as the noninfringement claim in the prior case, the court concluded that PIPCO's infringement claim was compulsory. *Id.* (emphasis added).

The same patent/same product rationale of *Polymer Industrial Products* was also apparent in its treatment of its earlier decision in *Vivid Technologies*. The court noted that in *Vivid Technologies*, "the manufacturer, Vivid Technologies, brought a declaratory judgment action seeking a

declaration that *its x-ray security device* did not infringe a patent owned by American Science Engineering, Inc. . . . ." 347 F.2d at 937–38 (citing *Vivid Techs.*, 200 F.3d at 801) (emphasis added). By characterizing its prior seminal Rule 13(a) case as involving a product-specific non-infringement claim, the court further indicated that Rule 13(a) preclusion extends to claims involving both the same patent and same product—and not to any potentially infringing products known at the time of the last filing of the noninfringement claim, as envisioned by PepsiCo.[4]

Second, the broad rule advocated by PepsiCo does not comport with the three-part test of Rule 13(a) that has been adopted in the Federal Circuit. Both *Polymer Industrial Products* and *Vivid Technologies* noted that a claim is compulsory under Rule 13(a) only when it: (1) raises the same issues of law and fact as did the declaratory judgment claim of noninfringement; (2) requires the examination of the same evidence analyzed in the declaratory judgment claim of noninfringement; *and* (3) involves a logical relationship to the declaratory judgment claim of noninfringement. *Polymer Indus.*, 347 F.3d at 937 (citing *Vivid Techs., Inc.*, 200 F.3d at 801). Where a party seeks a declaration of non-infringement concerning a specific product, it places the facts surrounding the specific product's design and the legal questions concerning its infringement directly in contention in

---

4. This characterization by the *Polymer Indus.* court is particularly notable since it does not appear from the opinion in *Vivid Technologies* whether Vivid brought a general or product-specific non-infringement claim. *See Vivid Techs.*, 200 F.3d at 800 ("Vivid produces an X-ray security device that uses backscattered and transmitted radiation along with other criteria in detecting suspicious objects. . . . Vivid brought an action for declaratory judgment that *it* 'neither infringed, induced infringement, nor contributed to the infringe-

ment of [ASE's '511 Patent] or any other patent owned by [ASE] covering x-ray back-scatter technology.") (emphasis added). It is not clear from the opinion alone whether Vivid Technologies' use of the word "it" in its non-infringement allegation referred to a specific product—the X-ray security device—or, like the broad counterclaim in the Rapak Litigation, to Vivid Technologies as an entity, theoretically covering any potentially infringing device used by Vivid Technologies.

the case. Thus, a counterclaim for infringement concerning the same product and same patent would, by definition, raise the "same" issues of law and fact, require the "same" evidence, and logically relate to the declaratory judgment claim—triggering Rule 13(a). But the same cannot be said for a claim seeking a general declaration of non-infringement without reference to any specific product. If the party seeking a declaration of non-infringement does not affirmatively state which products it is requesting the court to declare as non-infringing, then it does not follow that a counterclaim concerning any number of previously unmentioned products raises the *same* issues of law and fact and requires the *same* evidence as those products which are already at issue in the litigation. Indeed, there is simply no basis for a comparison of facts, law, or evidence, because it is not clear which products have yet been placed in the litigation.[5]

Finally, the Court notes the unintended consequences of adopting a rule turning the application of Rule 13(a) on whether a party possessed an indefinite level of "awareness" of other potentially infringing products used by the opposing party—as opposed to a more definite rule that turns on whether the parties placed a specific product at issue in the prior litigation vis-á-vis their allegations or conduct during that litigation. Under the former rule, by bringing a declaratory judgment action for non-infringement, all potentially infringing products may be up for grabs in the litigation. The opposing party, out of concern that it might later have to litigate

the issue of whether it was "aware" of other potentially infringing products for Rule 13(a) purposes, has strong incentive to vastly broaden the scope of discovery in the action, and seek information (usually from competitors) concerning other products about which it may suspect infringement, but on which it may not yet have a good faith basis to allege infringement. Courts are loathe, however, to allow parties to conduct such "'fishing expeditions' in hopes of finding products that might be infringing." *E.g., Moore U.S.A., Inc. v. Standard Register Co.,* 229 F.3d 1091, 1116 (Fed.Cir.2000). This approach to Rule 13(a) advocated by PepsiCo would inevitably run headlong into the relevancy limitations of Rule 26, requiring courts to consider broad-based and speculative discovery requests the relevancy of which is not yet supported in the record, but which may nonetheless be justified by the concerns caused by such a broad reading of Rule 13(a). Because Rule 11 also prohibits a party from bringing a product-specific claim of infringement without an adequate factual basis, the inevitable consequence is an untenable discovery and pleading dilemma that does not advance the purposes of Rule 13(a).

■■ In sum, PepsiCo's broad reading of Rule 13(a) in patent cases misconstrues the facts of *Polymer Industrial Products,* uproots Rule 13(a) from its foundation in the same-facts/same-law/same-evidence test, and is in significant tension with the limitations imposed on parties by Rule 26 and Rule 11. The better approach, and one that is consistent with both *Polymer*

**5.** The Rapak Case is the perfect illustration of this point. During the Rapak Litigation, PepsiCo repeatedly maintained that the Helical Coil Bag was *not* at issue, and strongly resisted efforts to allow discovery concerning its use of that product. PepsiCo's current suggestion that proof of Coke's infringement claim raises the "same issues of law and fact" and requires examination of the "same evidence" at issue in the Rapak Litigation—evidence which PepsiCo successfully refused to produce—is at odds with Rule 13's requirement that a compulsory counterclaim share factual, legal, and evidentiary similarity with the predicate claim.

*Industrial Products* and *Vivid Technologies*, is to limit the preclusive effect of Rule 13(a) to infringement claims concerning those products that were explicitly or impliedly placed in issue by a non-infringement claim in the prior case. Thus, where an "affirmative claim of patent infringement in [ ] prior litigation involv[ed] the same patent and the same accused product," a counterclaim for infringement is compulsory. *Polymer Indus.*, 347 F.3d at 937–38. And in cases involving a general claim for non-infringement without specification of products, the relevant inquiry is whether a specific product was "tried by express or implied consent of the parties."[6] FED. R. CIV. P. 15(b). Where a party successfully resists discovery of certain products on relevancy grounds, those products cannot be said to have been tried by consent of the parties in the prior litigation.

Applying this analysis, it is clear that Coke is not precluded from pursuing its claims in this case. PepsiCo's generalized claim seeking a declaration of non-infringement did not, on its own, expand the scope of the Rapak Case beyond the two products already at issue, the dip tube and evacufilm bags. PepsiCo resisted any discovery concerning the Helical Coil Bag during the remainder of the litigation, and did not request at trial that the jury make any findings with respect to the Helical Coil Bag. Thus, the issue of its infringement or noninfringement was never raised in the case, either by explicit allegation or by express or implied consent of the parties. Without having placed the Helical Coil Bag in issue, any infringement claim concerning that device did not arise out of the same transaction or occurrence as PepsiCo's general non-infringement claim, which concerned only the other two devices. Accordingly, Rule 13(a) was not triggered, and Coke is not precluded from pursuing its Helical Coil claim in this case.

### 2. PepsiCo is Judicially Estopped from Raising Rule 13(a).

█ In any event, as Coke correctly contends, PepsiCo is judicially estopped

---

**6.** It is for this reason that *Kim* is distinguishable from the instant action. In *Kim*, the plaintiff, in a prior case, had sought and received discovery concerning additional potentially infringing products not originally placed at issue in the litigation. 412 F.Supp.2d at 932. The defendant counterclaimed seeking a broad declaration of non-infringement. The plaintiff then belatedly moved to supplement her complaint to add additional claims of infringement, which the court denied. The plaintiff then brought a separate action for infringement concerning the new products. Applying the rule of *Polymer*, the court held that the additional products had been placed at issue in the earlier litigation, but the plaintiff had failed to timely move to supplement her complaint. Thus, it concluded, her claims were barred. *Id.* at 937. ("Dr. Kim is trying to bring infringement claims in a second lawsuit against the same patent and the same set of a putative infringer's products that were put at issue by the Defendant's counterclaim for a judgment of noninfringement of the '355 patent in the First Lawsuit.")

Unlike the defendant in *Kim*, however, PepsiCo refused to participate in discovery concerning the Helical Coil bag in the Rapak Case, even after it filed its final amended counterclaim seeking a broad declaration of non-infringement. The issue of the Helical Coil Bag was thus not placed at issue either by the counterclaim itself, or by express or implied consent of the parties, and thus Rule 13(a) preclusion did not trigger.

The other cases relied upon by PepsiCo are similarly unavailing. *See, e.g., Capo, Inc. v. Dioptics Medical Prods., Inc.*, 387 F.3d 1352 (Fed.Cir.2004) (holding that Rule 13(a) barred infringement claim concerning product that was discovered in prior action because alleged infringer "provided samples of the 'Suncovers' product, and sought through discovery to ascertain which patents Dioptics was asserting against the product"); *CIVIX–DDI, LLC v. Expedia, Inc.*, 2005 WL 1126906, at *4 (N.D.Ill. May 2, 2005) (barring suit that asserted "identical patents against *the identical accused technology* as in the Initial Action").

from invoking Rule 13(a) because its current position is clearly inconsistent with its vigorous and successful resistance in the Rapak Case to participate in any discovery regarding the Helical Coil Bag.

During the Rapak Litigation, PepsiCo repeatedly represented to Coke and to this Court that the Helical Coil Bag was not relevant to any of the claims by the parties in that action. For example, in seeking to limit the issues for resolution at trial, PepsiCo argued that the Helical Coil Bag was "totally unrelated to this case." (Pl.'s Ex. 32 at 3, 9.) PepsiCo also refused to produce or identify information concerning its use of the Helical Coil Bag, stating instead that it would "respond only with regard to the accused devices that are at issue in this litigation." (Pl.'s Ex. 18 at 2–3 (emphasis added).) And after it filed the Amended Answer that it now argues placed the Helical Coil Bag in issue in the Rapak Case, PepsiCo responded to Coke's motion to compel documents concerning the Helical Coil Bag by arguing that "the requested documents simply are not relevant to any issues in this action," and that "information relating to the . . . helical coil bags have [sic] no bearing whatsoever on the issues in this action." (Id. at 2–3, 9.)

On January 29, 2004, this Court entered an Order mostly rejecting Coke's Motion to Compel insofar as it sought documents concerning the Helical Coil Bag.[7] (See Rapak Litig., No. 1:02–CV–2887–RWS, Docket No. 81 at 2–3.) The Court relied on PepsiCo's statements that, standing alone, the Helical Coil Bag was not relevant to the issues involved in that litigation.

■■■■ A party may be judicially estopped from asserting a position in litigation when that position is clearly inconsistent with a position that it has previously

and successfully maintained. The rule also "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citing 18 MOORE'S FED. PRAC. § 134.30, p. 134–62 (3d ed.2000)). Judicial estoppel focuses on a litigant's relationship with the legal system, and protects the integrity of the judicial process by preventing a party from "play[ing] fast-and-loose with the courts, or . . . trif[ling] with judicial proceedings." 31 C.J.S. ESTOPPEL AND WAIVER § 139 (2007). The Supreme Court has defined the doctrine as follows:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*New Hampshire v. Maine*, 532 U.S. at 749 (internal citations and quotations omitted).

■■■■ When determining whether judicial estoppel applies, courts generally consider several factors, including (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the

---

7. Although the Court compelled PepsiCo to produce documents reflecting communications between PepsiCo and Liqui–Box that related to efforts to design around the pat-

ents-at-issue, the Court rejected Coke's efforts to obtain information from PepsiCo concerning its own use of the Helical Coil Bag. (See Rapak Litig., Doc. 81 at 2–3.)

first or the second court was misled; (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *See id.* at 750–51; *see also Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir.2002).

Applying these factors, the Court concludes with little hesitation that PepsiCo is judicially estopped from claiming that the Helical Coil Bag was placed at issue in the Rapak Case. PepsiCo's contradiction is clear. In now claiming the Helical Coil Bag was relevant to and part of the same transaction and occurrence as its non-infringement claim in the Rapak Case, PepsiCo has adopted a position that is clearly inconsistent with its position in the Rapak Case that the Helical Coil Bag was "not relevant" to and "had no bearing" on the issues therein. As to the second factor, this Court adopted PepsiCo's position that the Helical Coil Bag was not relevant, by refusing to compel PepsiCo to produce general information concerning its use of the Helical Coil Bag. (*See Rapak Litig.,* No. 1:02–CV–2887–RWS, Docket No. 81 at 2–3.) Finally, as to the third factor, it is clear that PepsiCo would derive an unfair benefit from raising Rule 13(a) in this litigation after successfully arguing the Helical Coil Bag was not at issue in the Rapak Litigation. Because Coke was prohibited from pursuing any discovery concerning the Helical Coil Bag in the Rapak Litigation, an application of Rule 13(a) preclusion would operate to prohibit Coke from raising its infringement claims concerning the Helical Coil Device in either proceeding. Accordingly, PepsiCo is judicially estopped from raising Rule 13(a), and is not entitled to summary judgment on that basis.

## C. Infringement

Having determined that, notwithstanding Rule 13(a), Coke may pursue the instant action, the Court turns to evaluate PepsiCo's claim that the Helical Coil Bag does not infringe the '493 Patent as a matter of law.

 Resolving a claim of patent infringement entails a two-step inquiry. First, the claims of the patentee must be construed as a matter of law. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995). This task was performed by the Court in the Rapak Litigation and reduced to an Order dated March 27, 2003. For purposes of this litigation, the parties have agreed to the prior claim construction. (*See* Joint Claim Constr. Statement [82–1] at 2.)

 Second, the claim as construed must be compared to the accused device. *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,* 214 F.3d 1302, 1306 (Fed.Cir. 2000). "In order to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Id.* (quotations and citations omitted). The determination of infringement, whether literal or under the doctrine of equivalents, is one of fact. *Id.*

 In order for a structure within an accused device to literally infringe a § 112, ¶ 6 patent limitation, the structure must "perform the *identical* function recited in the [patent] claim and be identical *or equivalent* to the corresponding structure in the specification." *Caterpillar Inc. v. Deere & Co.,* 224 F.3d 1374, 1379 (Fed.Cir. 2000) (emphasis supplied; quotations omitted). "Functional identity and either structural identity or equivalence are *both* required." *Id.* (emphasis in original).

 Even where an accused device does not literally infringe the subject patent, infringement may still be found under the doctrine of equivalents. *See, e.g., CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co.,* 224 F.3d 1308, 1318–19 (Fed. Cir.2000). In order to find infringement

under the doctrine of equivalents, each and every limitation of the claim at issue must be either literally or equivalently present in the accused device. *Id.* Determinations of equivalency most often progress under the inquiry announced by the Supreme Court in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); that is, whether the element in the allegedly infringing device performs substantially the same function in substantially the same way to obtain substantially the same result as the claimed element. 339 U.S. at 608. Equivalency can also be demonstrated, however, through alternative, objective showings that the differences between the accused device and the claimed invention are "insubstantial." *See Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed.Cir.1996). "Such evidence may include evidence of known interchangeability to one of ordinary skill in the art, copying, and designing around." *Id.*

1. *A Dispute of Fact Exists as to Whether the Liquid Channels of the Helical Coil Bag Infringe the Limitation of the '493 Patent that Requires the Liquid Channels Run "Substantially Perpendicular" to the Longitudinal Axis of the Spout.*

■■■ In its second contention in support of summary judgment, PepsiCo argues that the Helical Coil Bag does not contain a liquid channel that is "substantially perpendicular to [the] longitudinal axis of [the] spout," a requirement of both Claims 1 and 14 of the '493 Patent, and thus does not infringe Coke's '493 Patent as a matter of law. The Court has previously concluded that this limitation, as it is used in both Claims 1 and 14, requires that the liquid channel created by the evacuation device "is at substantially a ninety-degree angle to the longitudinal axis of the spout." (App. Ex. 6 at 8.) Furthermore,

the longitudinal axis of the spout, the parties have agreed, "refers to a line passing lengthwise through the center of the spout." (Pl.'s Ex. 8 at Ex. A, p.3.)

PepsiCo argues that, because the helical coil itself is coaxially connected to the center of the spout, any liquid channel created by the helical coil also runs coaxially, and thus does not run perpendicular to the center axis of the spout. PepsiCo cites the deposition testimony of William S. Credle, one of Coke's Rule 30(b)(6) witnesses in the Rapak litigation. During his deposition in the prior action, Mr. Credle testified that the most important consideration for categorizing whether a liquid channel of an evacuation device is coaxial or perpendicular is by looking at the juncture where the evacuation device meets the spout. (Pl.'s Ex. 15 at 87–88.) Because the helical coil in this case terminates inside of the center of the spout, PepsiCo argues that the evidence singularly favors the conclusion that the liquid channel(s) created by the helical coil must also run coaxially to the spout, not perpendicularly over its longitudinal axis.

PepsiCo further argues, relying again on the testimony of Mr. Credle in the prior action, that the only liquid channeling caused by the helical coil runs either within or directly adjacent to the helical coil itself. According to PepsiCo, during dispensation, the vacuum effect:

> causes the walls of the helical coil bag to collapse all the way around the coil to form a fully enclosed, hollow tube through which the liquid flows. Accordingly, when the helical coil terminates coaxially in the center of the spout's cage, the liquid flowing through the tube created by the helical coil must, as a matter of logic and common sense, follow this same path regardless of whether the liquid is flowing through the middle of the helical coil itself or along fluid

passageways that Coke erroneously claims to exist on the outside edges of the helical coil.

(Defs.' Br. in Supp. of Mot. for Summ. J. [90] at 39.)

Coke responds by offering expert testimony that the liquid channels present in the Helical Coil Bag are in fact substantially perpendicular to the spout's axis, particularly when the bag is in an empty, flattened state. Dr. Ari Glezer, for example, states that "[w]hen the bag is formed (by sealing the edges of the two plastic sheets that form the bag walls) and contains no liquid, the liquid channel that is engendered by the helical coil tube is ... substantially perpendicular to the longitudinal axis of the spout." (Pl.'s Ex. 5 at V.1(1.4).) Moreover, Mr. Credle, despite characterizing the *helical coil* as terminating coaxially into the center of the spout, characterizes the *liquid channels* created by the helical coil as orienting substantially perpendicular to the spout. (Pl.'s Ex. 6 at ¶ 21.) Thus, Coke contends that the liquid channels created by the Helical Coil Bag literally infringe the "substantially perpendicular" limitation in Claims 1 and 14 of the '493 Patent.

Reviewing the evidence in a light most favorable to Coke, a dispute of fact exists as to whether the liquid channels present in the Helical Coil Bag run substantially perpendicular to the spout. From the evidence, it is unclear how many liquid channels are created by the helical coil, whether and where those channels cross the spout, and at which degree and on which plain the channels cross the centerline axis of the spout. For this reason, the Court cannot conclude that the evidence establishes as a matter of law that PepsiCo is entitled to summary judgment on this aspect of its claim.

2. *The Helical Coil Bag Does Not Infringe the '493 Patent Because Its Evacuation Device is not "Secured Inside" the Bag as that Term Has Been Defined.*

 In its final contention in support of summary judgment, PepsiCo argues that the Helical Coil Bag does not infringe the '493 Patent because its evacuation device, the helical coil, is not "secured inside of said bag," as required by Claims 1 and 14 of the '493 Patent. In the Court's *Markman* Order in the Rapak Case, the Court defined "secured inside of said bag" to mean "adhered or integral with the wall of the bag." (Pl.'s Ex. 6 at 8.) It also noted that "[t]he patent does not make any reference to a point of attachment, and the Court will not read any such limitation into the language." (*Id.*) The Court further defined "integral" to mean "formed as a unit with another part," and the Court defined "bag wall" to mean "one of the two sheets forming the walls of the bag." (*Id.* at 7, 11.)

PepsiCo argues that, because the helical coil is not physically attached, connected, or bonded to the bag walls of the Helical Coil Bag, but is solely connected vis-á-vis the plastic cage to the spout of the bag, it does not infringe the "secured inside" limitation of Claims 1 and 14 the '493 Patent. Coke responds that the helical coil is secured inside of the bag because it is "fixed within the bag," which is one and the same as being "adhered or integral with the wall of the bag." (*See* Pl.'s Br. in Opp. to Summ. J. [116] at 46–47.) Emphasizing the Court's prior observation that "[t]he patent does not make any reference to a point of attachment," Coke argues that, when considered in context, "secured inside of said bag" reads on the Helical Coil device, which is connected to the bag walls via the spout and cage device. (*Id.* at 47–49.) Because "[n]othing in the claim re-

quires that the evacuation member be attached directly to the bag wall, and nothing in the claim requires the evacuation member to be attached by a method such as heat sealing or integral bonding," Coke urges that it has produced sufficient evidence that the Helical Coil Device infringes this limitation of the '493 Patent. (*Id.*)

In the Court's view, Coke's argument ignores the meaning of "secured inside" as construed by this Court and agreed upon by the parties. Although the Court found that the claims do not reference a specific point of attachment to the bag wall, the claims do require that the "liquid passage means" (claim 1) or the "fluid passage member" (claim 14) be "adhered to or integral with the *wall* of the bag." (Pl.'s Ex. 6 at 8 (emphasis added).) The wall of the bag is a distinct structure explicitly described in the '493 Patent as a separate component than the spout of the bag. The definition of "secured inside of said bag," which requires that the evacuation device be connected directly to the wall of the bag, serves to distinguish the devices protected by Coke's '493 Patent from the devices upon which it improved, which traditionally had either no evacuation component or an evacuation component that connected coaxially to the spout of the bag. The Helical Coil Bag returns to that traditional design by containing an evacuation device that terminates coaxially into the center of the spout. But unlike the Helical Coil Bag and the pre-'493 Patent devices, the '493 Patent refers to a bag containing an evacuation device that is adhered to or integral with the walls of the bag, such as in the preferred embodiment which includes a pair of elongated ribs that are transverse to the spout opening and are secured to the interior of the bag walls during the bag manufacturing process. This critical distinction saves the Helical Coil from infringing the '493 Patent as construed. *Cf. Abbott Labs. v.*

*Syntron Bioresearch, Inc.,* 334 F.3d 1343, 1353 (Fed.Cir.2003) (relevant inquiry is whether device meets requirement as construed by district court and not whether device meets requirement under other possible construction). Because the helical coil is plainly not "adhered or integral with the wall of the bag," the Helical Coil Bag does not literally infringe that limitation of the '493 Patent.

Coke also asserts that the "secured inside" limitation is met under the doctrine of equivalents. As previously stated, a patentee may invoke the doctrine of equivalents if the device "performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Manufacturing Co.,* 339 U.S. at 608. Equivalency can also be demonstrated through alternative, objective showings that the differences between the accused device and the claimed invention are "insubstantial." *See Texas Instruments Inc.,* 90 F.3d at 1566. "The determination of equivalence should be applied as an objective inquiry on an element-by-element basis." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). But it may not be given "such broad play as to effectively eliminate [an] element in its entirety." *Id.* at 29, 117 S.Ct. 1040.

For largely the same reasons as provided above, the Court concludes that the doctrine of equivalents does not save Coke's infringement claim from the death knell of the "secured inside" limitation in the '493 Patent. Substantial differences exist between the evacuation device element in the Helical Coil Bag and the element of the '493 Patent which requires that its evacuation device be adhered to or integral with the walls of the bag. Although all bags share the function of dispensing liquid by channeling liquid through a spout, the helical coil device

accomplishes this function absent the use of an evacuation device integral with the walls of the bag.[8] Accepting Coke's argument would read out of the '493 Patent the limitation that the evacuation device must be "secured inside" of the bag. *See id.* at 29, 117 S.Ct. 1040. This the Court declines to do. Since there is no dispute of fact concerning whether the helical coil in the Helical Coil Bag is substantially equivalent to the evacuation device contemplated by the '493 Patent, Coke has failed to establish a necessary element of its infringement claim against PepsiCo.[9] Accordingly, PepsiCo is entitled to summary judgment.

## II. Other Motions

Because the Court concludes that PepsiCo is entitled to summary judgment, PepsiCo's Motion to Compel Deposition

---

**8.** In addition, further distinguishing the Helical Coil Bag from the advantageous design protected by the '493 Patent, the manufacture of the Helical Coil Bag must be completed, in part, by manual means, prior to the automated bonding of the bag walls. (*See* DSMF ¶¶ 72–78.)

**9.** Because the Court concludes that Coke's claim under the doctrine of equivalents fails

Responses of Michael Kline [126] and PepsiCo's Motion to Compel [183] are **DENIED as moot.**

### Conclusion

For the reasons provided above, Defendants' Motion for Summary Judgment [90] is **GRANTED.** The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff in this action. Defendants' Motion to Compel Deposition Responses of Michael Kline [126] is **DENIED as moot.** Defendants' Motion for Leave to File Excess Pages [134] is **GRANTED** *nunc pro tunc.* Defendants' Motion to Compel [183] is **DENIED as moot.**

**SO ORDERED.**

---

under the "all elements rule," the Court declines to consider PepsiCo's argument that prosecution history estoppel precludes Coke from arguing that the evacuation device in the Helical Coil bag is substantially equivalent to the evacuation device contemplated in the '493 Patent.